# Drane v. Louisville Ry. Co.

May 23, 1939.

Eugene Hubbard, Judge.

Lukins & Jones for appellant.
John Tarrant for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The record before us discloses that on April 19, 1908, the appellant, W. R. Drane, an employee of the appellee, Louisville Railway Company, had his leg fractured when caught between two of appellee's cars, in the operation of which he was assisting, which collided at its car barn in Louisville, Kentucky, and that, as the result of his injury, his leg had to be and was amputated.

Upon the happening of this collision and appellant's resulting injury, the railway company had Drane hospitalized and given medical and surgical treatment, the expense of which it paid.

On April 14, 1909, Drane and the railway company, acting through its claim agents, undertook to compromise and settle Drane's claim for damages against the company and it is shown that in the course of their negotiations looking to such end, Drane, pursuant to a compromise agreement reached between them, signed a release, which he alleges was represented to him to be a receipt only for $800 paid him, on the margin of which there was also written in ink the statement that the company would further furnish Drane with a "first class (artificial) limb," as full consideration for his release of the company from liability for all claims to damages against it on account of his injury.

It is further shown by the evidence that at the time Drane was asked to sign, and signed, said writing or release, he did not read it nor was it read to him, but that it was handed to him for signing by the secretary of the defendant's claim department, when in the presence of the department's head officials, who said it was a receipt for the $800 which, pursuant to their release agreement, the company was paying him, and that he signed it, thinking he was thereby, as represented to him, receipting only for the $800 paid him for lost time occasioned by his injury.

Plaintiff further testified that while he was in the hospital suffering with this injury, the appellee's barn foreman, Fred G. Prozig, and T. C. Barnes, its claim adjuster, came to see him and told him that Mr. Funk, the official in charge of the company's claim department, wanted to know what he wanted as a consideration for executing a release to the company from liability for his damages suffered, and also told him to go over to the claim department and talk with Mr. Funk about making

a compromise settlement of his claim; that, acting on such proposal, he went to the office of the claim department in February, 1909, when a verbal compromise agreement for release of his claim against the company was made with Mr. Funk, whereby it was agreed that the company, in consideration of his giving such release to it, was to pay him $800 in cash for his loss of time suffered by reason of his injury and also give him lifetime employment at work which he could do, such as barn foreman or dispatcher; and that, pursuant to such agreement, he was given employment with the defendant in April, 1909, in the dispatcher's office, at which he worked until 1911, when he was transferred to and given work at the barn of the Louisville & Interurban Railway Company (an affiliate of the defendant company), where he was employed until November 1, 1935, when his employment was terminated upon the company's going out of business.

Following Drane's discharge from employment with the Interurban Railway Company, he claims that he diligently, but unsuccessfully, exerted himself to secure other employment and also made repeated requests upon the defendant, Louisville Railway Company, to re-employ him, in conformity with the agreement made with him (in consideration of which he executed his release to the company) to give him lifetime employment. He states that notwithstanding his expressed continuing readiness and willingness to return to work and repeated requests made upon the company for re-employment, it repudiated its contract made with him to give him lifetime employment and refused to re-employ him.

Because of such alleged repudiation and breach of the release agreement entered into between him and the company in April, 1909, Drane on March 6, 1936, brought this action, wherein he sought recovery of damages therefor in the sum of $27,200.

In his petition he alleged in substance the facts recited supra, setting out the compromise agreement made with defendant, whereby the company agreed, in consideration of his executing it a release, to give him lifetime employment and, further, that pursuant to such contract of settlement, the defendant had given him employment from April, 1909, to November, 1935, when it breached its contract by discharging him without cause and thereafter continued its refusal to re-employ him.

The defendant railway company denied this allegation as to its making of such contract and its breach of it and pleaded, as a bar to plaintiff's alleged right of recovery of damages thereon, his written release, in full settlement of all damages, executed it on April 14, 1909, which is as follows:

"The Louisville Railway Company, Incorporated. $800.00 To Wm. R. Drane, Dr.

Address, 124-26th Street Louisville, Ky. April 14, 1909.

"Received of the Louisville Railway Company, this the 14th day of April, 1909, the sum of Eight Hundred Dollars, in full compromise, payment, satisfaction and discharge of all claims and demands which I have against said Railway Company, its employees or agents, for or on account of any and all damages, injury, expenses or loss, which I have sustained in person, right or property, by or through said Railway Company, its employees or agents, and especially for the injury done me on the 19th day of April, 1909, by collision between cars at 25th and Market Street barn.

"This receipt is in full of all damage and expense of whatsoever nature. (Notation in margin.)

"We will also pay Mr. Matthews for a first class limb.

"O. K.—J. T. Funk.

"Witness: J. T. Funk.        Wm. R. Drane."

Further, defendant denied making any agreement with Drane to employ him for life or for any time; that the agreement, alleged by Drane made with defendant to employ him for life, was not in writing; that more than twenty-five years had elapsed between the time he alleged said agreement was entered into and the institution of this suit; and pleaded and relied on the five and fifteen year statute of limitations, in such case made and provided, in defense to plaintiff's cause of action.

Drane by reply denied that he had read the alleged release or that it was read to him at the time he signed it, and alleged that it was represented to him at such time as being only a receipt for the $800 which was being paid him for back wages, and that it did not contain

the whole contract entered into between plaintiff and defendant, which was, as stated in the petition, that plaintiff was not only to receive $800 for his loss of time, but the additional consideration of lifetime employment by defendant. He further alleged that the receipt or release, insofar as it purports to be anything further than a receipt for $800, is a fraud on plaintiff, in that it was obtained by the representation made when he signed it, that it was only a receipt for said amount.

Thereupon the defendant moved that the cause be transferred to equity, which was overruled. It then filed its rejoinder, denying the affirmative allegations of the reply, and further, by its second paragraph, set out that the suit was filed more than twenty-six years after the said contract of release was entered into between plaintiff and defendant and that the terms of said contract could not now be varied, reformed or changed; that there was no fraud or mistake in obtaining the execution by Drane of the contract and release set forth in the answer; that Section 2515, Kentucky Statutes, provides that an action for relief on the ground of fraud shall be commenced within five years next after the cause of action accrued; and, further, that Section 2519, Kentucky Statutes, provides that in actions for relief from fraud or mistake, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; and that no such action shall be brought ten years after the making of the contract or the perpetration of the fraud or mistake.

Defendant pleaded and relied upon such provisions of the statute of limitations in bar of any right on the part of Drane to bring the cause of action on the alleged parol agreement, or to have reformed or modified the parties' contract of release, executed April 14, 1909, for fraud or mistake in its obtention and prayed that the petition be dismissed.

Plaintiff surrejoined, denying the allegations of the rejoinder and particularly the application of the sections of the statute of limitations relied on in bar to plaintiff's right to bring the action or that defendant could rely on or apply the statute of limitations, provided for in such actions, in bar to any right of plaintiff to bring this action or in bar of the cause of action set out in the petition and reply.

Thereupon defendant filed an amended answer,

wherein it alleged that at the time the agreement and release of April 14, 1909, was executed by the company and plaintiff and the company paid to plaintiff the sum of $800 and furnished him with the artificial limb referred to therein, Drane was making claim against the company on account of his said injury, which defendant was in good faith denying and contending that it was not obligated to him for any sum as damages growing out of the said injury, and that the said agreement and release was entered into for the purpose of compromising and settling such dispute. Further defendant alleged that plaintiff had not returned or tendered to the railway company any part of the said sum of $800 or the artificial limb, or any part of the value thereof, or the $85 paid by the company therefor, or otherwise offered to restore to the company any part of the consideration which it had paid him in settlement and compromise of said claim. Defendant also pleaded that at the time of its settlement with Drane, and all other times, the railway company had no corporate power to enter into the agreement for the employment of any person for life and that any such agreement was ultra vires and void; further, that at the time of the settlement with Drane on April 14, 1909, the agents and employees of the defendant company, who negotiated the settlement with Drane, had no authority or power to make any agreement with any person for the employment of such person for life and that if they made such agreement with Drane, it was void.

Further it pleaded that the settlement agreement and release set forth in the original answer is a written contract between the railway company and Drane and can not be changed, added to or varied by parol.

Upon trial had of this cause, it was testified by plaintiff and his witnesses that by the terms of the compromise agreement made between plaintiff and defendant, and in consideration of which it obtained his execution of its release from liability for damages on account of his injuries suffered, the defendant agreed with plaintiff that it would pay him the sum of $800 in cash, as back wages for his time lost, and furnish him an artificial leg and also, in addition thereto, assumed the contractual liability of furnishing him with employment for life.

Upon the conclusion of the introduction of evidence

by the parties in support of the issues joined, the court in substance, by its instruction No. 1, instructed the jury that if it believed from the evidence that the defendant company agreed with plaintiff, in settlement of his claim for damages arising out of the injury suffered by him on April 19, 1908, that it would pay him the sum of $800 for lost time, give him an artificial limb and furnish him with steady and permanent employment as a dispatcher or barn foreman so long as plaintiff lived and could perform such services, it would find for plaintiff.

By instruction No. 2 the jury was told that if it believed from the evidence that the defendant company did not agree to give the plaintiff steady employment, as set out in instruction 1, or believed that the company, through its agents, agreed, as part consideration for settlement of plaintiff's claim, that it would give to plaintiff employment for life but that its agents were without authority to make such agreement, it would find for the defendant.

By instruction No. 3 it was told that if it believed from the evidence that the writing in evidence shows the entire consideration paid and to be paid Drane, it would find for defendant, but that if it believed that the consideration of the agreement filed in evidence was the sum of $800, the artificial leg and employment for life by defendant, the law was for plaintiff.

By instruction No. 4 the jury was told that if it believed that the written release, filed as a part of the proof, was a full and complete settlement and release of all claims for damages against the defendant, arising out of the injuries received by plaintiff, it must return a verdict for defendant, unless it further believed from the evidence that said release was not read to or by plaintiff and that defendant represented that it contained only a receipt for the $800 for lost time, and that plaintiff believed and relied on said representation and but for it would not have signed said release.

Upon submission of the case to the jury upon the instructions given and the evidence, on June 16, 1937, it returned a verdict on behalf of plaintiff in the sum of $20,000.

Thereupon defendant filed motion and grounds for a new trial, which the court thereafter, on October 16,

1937, sustained and having indicated, it appears, in his opinion sustaining the motion for a new trial that he would dismiss plaintiff's petition on the ground that the action was barred by Section 2519, Kentucky Statutes, the parties, to facilitate a second trial, agreed to submit the case to the court upon the evidence produced at the first trial, without the intervention of a jury.

Pursuant to such submission, the court on February 7, 1938, returned its findings of law and fact, wherein it was stated that:

"The court finds the fact to be that the alleged release for $800.00 and the furnishing of a cork limb, did not embrace the entire contract of settlement between the plaintiff and defendant; and that in addition thereto, plaintiff was to be given lifetime employment as barn foreman or dispatcher, and that pursuant to said contract, the plaintiff did work as a barn foreman and dispatcher and in other capacities until November 1, 1935, at which time, the defendant refused to employ him further or to pay him further compensation, and he has been unable to secure other employment since said time."

The court's conclusion of law, based upon such finding, was that plaintiff having replied to the affirmative allegations of defendant's answer, wherein he alleged that said contract of release was not read to nor by him, that the defendant's agents represented to him it (the release) contained only a receipt for the $800 paid him for back wages, that the said release, did not contain the true contract entered into between the parties and further alleged fraud in the procurement of said written release he thereby brought his case within the provisions of Section 2519, Kentucky Statutes, dealing with fraud or mistake and providing that:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

The court thereupon adjudged, in harmony with the above conclusion, that inasmuch as the settlement agreement between the parties, here involved, was entered into in April, 1909, and this action was not filed until

more than twenty-seven years after the contract of settlement was entered into, under the said section, 2519, Kentucky Statutes, pleaded and relied on by defendant, the plaintiff's claim was barred and directed judgment for defendant.

Thereupon plaintiff moved the court to substitute for its findings of fact and conclusions of law and its order entered October 16, 1937, granting a new trial to defendant, the judgment entered upon the jury's verdict rendered at the first trial of the action, which motion was overruled, as well as plaintiff's motion and grounds for a new trial, when it was adjudged that plaintiff's petition be dismissed with costs, etc.

Following this, plaintiff moved the court to set aside the judgment rendered upon its findings of fact and conclusions of law and substitute therefor the judgment of June 16, 1937, based upon the jury's verdict in the first trial, which motion was also overruled.

Plaintiff then filed motion and grounds for a new trial, which was overruled.

The grounds set out in support of plaintiff's motion for a new trial are: (1) that the court erred in overruling his motion to substitute the judgment rendered on the verdict of the jury; (2) that it erred in refusing to set aside its findings of law and fact and substitute the verdict of the jury therefor; (3) that it erred in holding the plaintiff was estopped from prosecuting his action by the statute of limitations; (4) that it erred in dismissing his petition on the ground that the provisions of Section 2519, Kentucky Statutes, applied; (5) that it erred in refusing to hold, as a matter of fact and law, that defendant, by its acts, words and conduct through the years intervening between the date of the alleged release and its later discharge of plaintiff, waived its right to plead the statute of limitations; and (6) that it erred in refusing to hold that Section 2519, Kentucky Statutes, was unconstitutional, as being in violation of Sections 14, 27 and 28 of the Kentucky Constitution and in conflict with the Fourteenth Amendment of the U. S. Constitution, U. S. C. A.

In determining the merit of this appeal, asking a new trial and reversal of the judgment upon these several grounds assigned, we conceive that no useful purpose would be served by entering upon an elaborate dis-

cussion of them all, in view of the conclusion reached that a consideration and decision of but two of the several grounds are quite sufficient to conclusively determine the appeal upon its merits.

The first of these two questions, which we consider is here pivotal and determinative of appellant's motion for a new trial and reversal of the judgment, is: Did the court err in refusing defendant the peremptory instruction moved for at the conclusion of the evidence? The defendant's contention, as to being entitled to a peremptory instruction, was based on the court's claimed error in permitting the introduction of parol evidence to establish a verbal contract, contemporaneously made between the parties, tending to vary the terms of their written contract of release, in that, by the verbal contract alleged made, it was provided that the defendant, in addition to the consideration paid for the release executed it, was to assume the further executory, contractual obligation to give plaintiff lifetime employment with it, even though plaintiff sought to recover damages for the breach of such alleged promise, without also asking reformation of the written release or making any attack upon it on the ground that its execution was obtained by fraud or mistake, such right to recover being only conditioned, as set out in instruction No. 1, upon the alleged fact that plaintiff signed the release without reading it or having it read to him, and when believing and relying on the representations then made him by defendant's agents that he was signing only a receipt for the $800, as being paid him pursuant to the claimed terms of their compromise settlement agreement.

While it appears that the defendant company's motion and grounds for a new trial was sustained and a new trial granted, when the cause, by agreement of parties, was submitted to the court upon the record and evidence heard in the first trial, the court again found as a fact and also as his conclusions of law, based thereon, that by this parol evidence (stated supra), and previously submitted to the jury with the instruction that it might find damages for plaintiff as for a breach of the verbal contract, whereby he was promised lifetime employment, even though such promise was an executory or contractual obligation to pay an additional consideration for the release over that stated as promised and paid in their written contract of release, if it believed from such evidence that such verbal contract was made

and further believed that the written contract was signed without his reading it or having it read to him and in the belief that he was only signing a receipt for the money paid and to be paid him under the terms of his compromise agreement, it was established that the company had, by the terms of its verbal compromise agreement made with plaintiff, agreed to pay him $800 in cash, furnish him an artificial limb and give him employment for life, but that plaintiff's claim for damages for breach of the contract was barred by the statute of limitations.

It is our conclusion that the court erred in its conclusions of law, based on this parol evidence, by which it was sought to vary the terms of the written release without attacking it as having been executed by mistake or fraud, or seeking to avoid its conclusive effect (as being a full and complete settlement of plaintiff's claim) by its reformation upon the grounds stated, notwithstanding the court did properly adjudge that plaintiff was not entitled to recover the damages he sought and that his petition be dismissed, on the ground that plaintiff's action was, in effect, one based upon the allegation of his reply, that a fraud had been perpetrated on him by the company's breaching its promise to give him life employment, made at the time of their agreement in 1909, some twenty-seven years before this action was brought, and that therefore plaintiff's suit came within the prohibitory provisions of Section 2519, Kentucky Statutes, and was thereby barred.

Plaintiff contends that the court's ruling, in holding his action barred by the statute of limitations, was erroneous and in support thereof cites and relies upon the case of Louisville & Nashville Railroad Company v. Cox, 145 Ky. 667, 141 S. W. 389, 391, where the facts and the question arising thereon were substantially the same as those here presented.

Fox, a switchman in the yards of the defendant railroad company, was injured in December, 1894, by getting his hand mashed between two cars, with the result that he lost the use of it. In February, 1908, some fourteen years after receiving his injury, he brought his action against the company, alleging that he made a settlement with it in March, 1895, by which it agreed to pay him $500 and give him employment as a switch tender as long as it was in business in Kenton county

and that, pursuant to such agreement, the company had given him employment until December, 1907, when it discharged him without cause. For its alleged breach of its contract, to so employ him, he prayed judgment in the sum of $25,000.

Several witnesses testified as to the company's making, by its agents, such verbal settlement agreement with Cox. Later, when Cox received the $500, he signed a writing, releasing the company from all liability and accepting the $500 paid him in full settlement of his claim against it for damages, but he testified, as is testified in the instant case, that he signed the release, without reading it, at the direction of the company's yard master, who told him that it was only a receipt for $500.

The making of this representation was there denied, as the making of a like representation is in the instant case.

On this evidence, the court's instructions given the jury were practically verbatim those given the jury upon substantially the same evidence in the instant case, upon which the jury returned a verdict there, as here, for the plaintiff.

Further, the appellant company upon appeal insisted, as also it is here insisted, that the jury should have been peremptorily instructed for it, to which the court there answered:

"But this is not an action to set aside the settlement for fraud. It is an action to enforce the settlement. It is only insisted by Cox that by fraud a certain writing was obtained from him, which he was told was a receipt for the $500, but which was in fact a contract of settlement. The case falls within the rule laid down in McGill v. Louisville & Nashville Railroad Company, 114 Ky. 358, 70 S. W. 1048, 24 Ky. Law Rep. 1244; Ingram v. Covington, etc., R. R. Company, 89 S. W. 541, 28 Ky. Law Rep. 508; Bramble v. Cincinnati, Etc., R. R. Company, 132 Ky. 547, 116 S. W. 742."

Further, the court stated in its opinion that:

"We are of the opinion that the case was properly submitted to the jury. * * *

"The weight of the evidence shows that there was an agreement between him and the railroad offi-

cials that they were to give him a steady or permanent job. The amount they paid him was so disproportionate to the extent of his injury as to well warrant the jury in concluding that there must have been some other consideration for the settlement.''

Such being the court's conclusion, it held that there was no error in the instructions given the jury, whereby it was permitted to consider the parol evidence introduced to vary the terms of the parties' written release, as showing a verbal compromise agreement made whereby the defendant promised an additional consideration to that provided for in the written release, that it would give him permanent employment, which imposed the further executory or contractual liability upon it.

Such rule thus announced in the Cox case was in the later case of Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955, 956, as well as other later cases of like holding, rejected. The court there, in its opinion delivered by Chief Justice Thomas, clearly stated the true rule as follows:

''The legal question involved in this case is the proper construction and application of Section 472 of our present Kentucky Statutes, saying:

'' 'The consideration of any writing, with or without seal, may be impeached or denied by pleading verified by oath.' * * *

''There is some apparent confusion in the opinions of the court, including those of this one in the application of the common-law exceptions to the general rule, supra, and our statutory adoption of it, growing out of the failure to properly distinguish, circumscribe, and limit the character of 'consideration' that may be altered or varied by contemporaneous parol and extrinsic testimony under such permissible practice. * * * We are, therefore, confronted with the question as to what is the nature or character of consideration that the common-law rule, and our statutes supra, refer to when they say that 'the consideration of a contract may be altered or impeached by extrinsic parol testimony?' * * *

''A discussion of the character of consideration that may be impeached or otherwise altered by parol testimony, under the common-law exception to

the general rule and our statute supra, is found in volume IV of Mr. Wigmore on Evidence, Section 2433, and it is therein said that in some classes of contracts 'the statement of a consideration may, on the other hand, sometimes be itself an operative part of a contractual act, as when in the same writing the parties set out their mutual promises as considerations for each other; here the word 'consideration' signifies a term of the contract, and hence the writing alone can be examined."

This rule is likewise stated in Williston on Contracts, volume I, section 115a, page 242, in part as follows:

"Lord Hardwicke was of the opinion that for whatever purpose such evidence was offered, proof could not be given that the consideration, stated in a deed was in fact not the whole consideration, unless such words as 'and other considerations' followed the statement of specific consideration. But so strict a rule is no longer applied either in England or America. By a relaxation originating in equity and extending to courts of law, additional consideration may be shown which is not repugnant to the consideration named. And, generally, at the present time, even though the consideration in fact was entirely different from the consideration named in the deed and not merely additional to it, the truth may be shown for any purpose except the impeachment of the validity of the deed for lack of consideration, unless the stated consideration is promissory in character and not merely a recital of fact."

In note 87, thereto, page 243, it is stated that: "the parol evidence rule which is equally applicable to sealed and unsealed writings here comes into play."

While, as stated in the Apple case, supra, parol evidence is generally admissible for the purpose of proving that a release was signed without knowledge of its contents and without any intention on the part of the signer to execute an instrument of that character, or to show the consideration on which the release rested, such general rule does not apply to a written acknowledgment of money as received "in full" for a demand for unliquidated damages, nor does it come within the rule which allows a simple receipt to be contradicted by parol. Such acknowledgment is treated as a conclusive release,

and, unless obtained by fraud or the like, bars any further claim. In such case, "the burden is always on the assailant of the contract to establish the vice which he alleges induced it, and a bare preponderance of the evidence will not sustain the burden. Written agreements of settlement and release will not be rescinded for fraud, unless the evidence thereof is clear, unequivocal, and convincing, as innocence, not fraud, is presumed." 23 R. C. L., sections 47 and 48, pages 416 and 417. Out of the many cases cited in appellee's brief, see, also, Baker v. Horsley, 212 Ala. 181, 101 So. 830, 831; Sims v. Best, 140 Ark. 384, 215 S. W. 519, 520; Harding v. Robinson, 175 Cal. 534, 166 P. 808, 811; Brosseau v. Jacobs Pharmacy Company, 147 Ga. 185, 93 S. E. 293, 295; Hilgeman v. Sholl, 21 Ind. App. 86, 51 N. E. 728; Clayman v. Bibler, 210 Iowa 497, 231 N. W. 334, 336; Howe v. Walker, 4 Gray 318, 70 Mass. 318; Dodge v. Cutrer, 101 Miss. 844, 58 So. 208.

In view of such being the well-established rule of this as well as a majority of the other jurisdictions, it is our conclusion that although the trial court was in error in holding upon the first and second trial of this cause that parol evidence was competent to vary the terms of the parties' written contract of release, by showing that the consideration, therein recited as being paid in full for the release granted, was not the whole consideration promised therefor, but that under the terms of the parties' verbal compromise settlement of his damage claim, defendant had further promised plaintiff lifetime employment or, that is, imposed an additional contractual liability upon the defendant, without plaintiff's asking a reformation of the written contract or without attacking the written release upon the ground of its obtention by fraud or mistake, we are yet of the opinion, even though under such circumstances the defendant was entitled to a peremptory instruction, telling the jury to find in its favor, that the court's error in refusing it was not of prejudicial effect upon the substantial rights of appellee, in that the court in effect did hold that the action brought was one for relief from fraud or mistake in plaintiff's execution of the release and that, therefore, under the provisions of Section 2519, Kentucky Statutes (prohibiting the bringing of an action for relief from fraud or mistake ten years after the time of the making of the contract or the perpetration of the fraud), it was barred, as the contract, for the breach of which plaintiff

here claimed damages, was entered into with the defendant more than twenty years before the institution of his suit.

Judgment affirmed.