## Edwards v. Kentucky Utilities Co.

May 2, 1941.

342

Chas. N. Hobson and B. J. Bethurum for appellant.

B. V. Smith & Son and Gordon, Laurent, Ogden & Galphin for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This appeal is from a judgment dismissing appellant's petition seeking damages for the breach by appellee of a contract for permanent and continuous employment. The evidence introduced by appellant which the Trial Court deemed insufficient to submit to the jury disclosed the following facts:

Appellant began working for the appellee as a meter reader, tester, and repairman, in 1932. Additional duties were assigned to him, and in November, 1937, he was transferred to the office of the company in Pineville. His employment was terminated by the appellee on December 24, 1937. A few days thereafter he called upon Frank McGiboney, meter superintendent at appellee's Danville office, to ascertain whether McGiboney had any work for him. He was informed by McGiboney that he would like to put appellant to work the following day, but that it would be necessary for him, McGigoney, to obtain authorization from the home office of the company at Lexington. Pending the procurement of the necessary authorization, appellant secured employment with the Southern Railway Company at Spartensburg, South Carolina, "during the period of re-conditioning cars at Spartensburg." Appellant worked for the Southern Railway Company two days, and, on receiving a telephone message from Cressell Edwards, his brother, that the job with appellee was waiting for him, returned to Kentucky and had a conversation with McGiboney which was thus related by appellant from the witness stand:

"Q. Go ahead, now Mr. Edwards, and tell the Jury what was said there between you and Mr. McGiboney, and if the contract was made, tell what that contract was? A. Well, I told Mr. McGiboney that I was working for the Southern Railway Com-

pany, and was acquiring seniority rights with them, and that I wanted an understanding as to what we were going to do; I told him I wanted to be put back just like I was before, and he agreed to pay me my salary for the time I was gone, and he told me the Company would furnish me permanent employment as a meter tester, inspector and repairman.

"Q. Go ahead, Mr. Edwards, and explain to the Jury fully all that was said between you and Mr. McGiboney. A. Well, I told him that the Company let me out before on account of my union activity, and I wanted to know if that would have any effect on me this time, and he says 'You will not be bothered on account of your union activity.'

"Q. Was there anything said as to whether or not the Company would make any objection to your union activity? A. He said they would have no objection, yes.

"Q. Did he say anything as to how long your contract of employment would last? A. He said it was to be permanent."

Before appellant had returned to Kentucky, his father had telephoned McGiboney at the request of appellant's wife. The conversation which took place between the father and McGiboney was thus related by the father:

"A. Well, I asked him if it would be a permanent job, and he said it would, and he said as soon as they could they was so they going to have a new meter set-up, and they was going to divide it up into Districts, and he said he wanted Ellis to have one of the Districts. I told him that Ellis's job was his meat and bread and that he didn't want to give up the job he had unless the other job was permanent, and he said it was permanent."

After telephoning appellant at Spartensburg that the job was waiting for him, Cressell Edwards also had a conversation with McGiboney—

"A. I told Frank McGiboney that Ellis would come back and would accept employment with the Kentucky Utilities Company, if the Company would pay him full time for the time he was off, and pay

him what they had been paying him previously, and would give him a permanent job with the Company.

\* \* \* \* \* \*

"Q. What did Mr. McGiboney say? A. He said, 'Get him back, I will accept the agreement.'

"Q. The proposition that you had put up to Mr. McGiboney was the proposition outlined to you by Ellis. A. Yes, I went over the agreement with Mr. McGiboney on the telephone, and told him what it would take to get him back."

Appellant testified that he would not have accepted the position offered him by appellee had it not been agreed that the position would be permanent; that he began working for the appellee under the agreement referred to on February 1, 1938, and was discharged on November 1, 1938. In relating the circumstances of his discharge, appellant testified:

"He (Mr. McGiboney) said they would not need my services any longer, and I asked him if my union activities had anything to do with my being discharged, and he said the fact that I was a leader in the Union caused them to decide that they would discharge me, and I left."

His salary was $120 per month and expenses, and in addition he was paid this salary during the period of his unemployment by the appellee from December 24, 1937, to February 1, 1938. Logan Waddell, who, as general chairman of the Electrical Workers' Union, had obtained appellant's employment with the Southern Railway Company, testified that appellant did not seek reemployment by that company through him; but appellant testified that after his discharge by appellee on November 1, 1938, he had not been able to obtain employment. Aside from the testimony relating to the alleged seniority rights obtained by appellant as a result of his two days' employment by the Southern Railway Company, the foregoing is the substance of the testimony introduced by appellant, at the conclusion of which the Court peremptorily instructed the jury to find a verdict for the appellee. Thus, the fundamental question for decision, stated in its broadest terms, is whether, conceding that appellee agreed to employ appellant "permanently" and discharged him without sufficient cause, it is liable to appellant in damages.

A universally recognized rule of law is that a contract for permanent employment which is not supported by any consideration other than the obligation of services to be performed on the one hand and wages to be paid on the other is a contract for an indefinite period, and, as such, is terminable at the will of either party. R. C. L., Vol. 18, pp. 509, 510; Corpus Juris, Vol. 39, p. 72; Clay v. Louisville & Nashville R. R. Co., 254 Ky. 271, 71 S. W. (2d) 617; Louisville & Nashville R. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467; Perry v. Wheeler, 12 Bush 541.

Appellant's counsel concede the rule of law to be as stated above, but contend:

"(1) Based on an additional consideration, master and servant may make a contract for permanent employment. (2) And when such an agreement is made it gives to the servant an option growing out of the original consideration. (3) This extra consideration may be the release of a claim for injuries, but may, as in the Carnig case, be founded on some other proper consideration."

In support of these contentions, appellant's counsel rely principally upon the cases of Yellow Poplar Lumber Company v. Rule, 106 Ky. 455, 50 S. W. 685, 20 Ky. Law Rep. 2006; Kelly v. Peter & Burghard Co., 130 Ky. 530, 113 S. W. 486; Louisville & Nashville R. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; Paducah Home Telephone Co. v. Ellerbrook, 182 Ky. 195, 206 S. W. 282; Drane v. Louisville Railway Co., 279 Ky. 490, 131 S. W. (2d) 439; Carnig v. Carr, 167 Mass. 544, 46 N. E. 117, 35 L. R. A. 512, 57 Am. St. Rep. 488.

In the case of Yellow Poplar Lumber Company v. Rule, supra, the company agreed to employ Rule at the rate of $2.50 per day, so long as it engaged in the sawmill business in a specified territory, in consideration of Rule relinquishing his claim against the company for damages for personal injuries sustained while in the company's employ; and this Court stated, in upholding the contract, that it perceived no reason why the employee might not purchase for a valuable consideration the right to obtain employment or option to work at the company's mills so long as it engaged in running them at the place designated, and quoted Beach, Modern Law of Contract, Section 457:

"When an employé, in consideration of an agreement on the part of the employer to give him work as long as he is able to perform it, releases a claim for damages said to have been caused by the employer's negligence, the agreement is not void because lacking mutuality. By releasing his claim, the employé has paid in advance for an optional contract, and he has the right to have it remain optional."

In each of the Kentucky cases relied on by the appellant, the consideration for the contract of employment was the relinquishment by the employee of a claim against the employer for damages resulting from personal injuries asserted to have been caused by the negligence of the employer; and counsel for appellee in effect concede that where a contract for permanent employment is supported by a consideration definitely agreed upon and paid in advance by the employee to the employer, the contract is valid. In the Massachusetts case of Carnig v. Carr, supra, where the contract sued on was for permanent employment at stipulated wages, the consideration was the giving up by the plaintiff of an enameling business similar to that in which the defendant was engaged. The Court held that the agreement did not bind the defendant to employ the plaintiff so long as they both lived, but did bind the defendant to employ the plaintiff so long as the defendant remained in the enameling business and the plaintiff rendered satisfactory services. The Court found that the surrounding circumstances and mutual understanding of the parties gave definition to the period of employment contemplated. Notwithstanding the fact that it is reasonable to suppose that the defendant in the Carnig case received a consideration for the contract other than the mere undertaking of the plaintiff to render services, namely, the elimination of a competitive business, appellant urges us to broaden the present Kentucky rule and hold that any consideration, such as the suffering of a detriment by the employee, is sufficient to support a contract of permanent employment, notwithstanding the fact that no consideration was paid to the employer and none stipulated for his benefit other than the employee's undertaking to perform stipulated services. Specifically, he urges us to treat as an adequate consideration for the contract sued on, the surren-

der of his seniority rights with the Southern Railway Company accruing as a result of his two days' employment by that company. An examination of the testimony introduced by the appellant discloses the fact that these seniority rights were of slight, if any, value, consisting of appellant's right to be recommended by the Union for re-employment by the company over those in similar lines of work who had been employed by the company for a lesser period of time. Hudson v. C., N. O. T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S., 184, Ann. Cas. 1915B, 98. But be this as it may, no consideration was paid to the appellee for the contract of employment sued on; and we are not disposed to broaden the present rule in this state by which such contracts are construed as contracts terminable at the will of either party, except when they are supported by a consideration moving from the employee to the company other than the employee's undertaking to render services. Rasnick v. W. M. Ritter Lumber Co., 187 Ky. 523, 219 S. W. 801.

This conclusion renders it unnecessary to discuss the other defenses interposed by appellee such as the lack of authority in McGiboney to bind it to such a contract as that sued on and appellant's knowledge of the lack of such authority.

For a discussion of the philosophy underlying the rules of law relating to the validity and duration of contracts of employment, the reader is referred to the authorities cited in this opinion.

Judgment affirmed.