**KUNZ v. COLNON et al.**

**PERRIN v. SAME.**

**CAMPBELL v. SAME.**

Civil Actions Nos. 4379–4381.

District Court, D. Kansas, First Division.

March 31, 1944.

Benjamin F. Endres, of Leavenworth, Kan. (Nile L. Vermillion, of Jefferson City, Mo., and Lewis F. Randolph, St. Joseph, Mo., on the briefs), for plaintiffs.

J. E. DuMars, of Topeka, Kan. (Clayton M. Davis, of Topeka, Kan., on the briefs), for defendants.

HELVERING, District Judge.

Plaintiffs filed their suits in the District Court of Leavenworth County, Kansas, on September 2, 1939. The actions were brought to recover damages for alleged breaches of employment contracts. On petition of defendants, the cases were removed to this court. Following the death in 1943 of the Honorable Richard J. Hopkins, then United States District Judge for the District of Kansas, the cases were, by agreement of the parties on January 20, 1944, consolidated and submitted to the present court for trial without jury on the record, affidavits, exhibits, testimony, and arguments of counsel.

After the filing of a petition by the Chicago, Rock Island and Pacific Railway Company, under Section 77 of the Federal Bankruptcy Act, 11 U.S.C.A. § 205, in the United States District Court for the Northern District of Illinois, Eastern Division, on June 7, 1933, that court appointed trustees to take charge of, control and operate all of the properties of said company. The effective date of such appoint-

ment was December 1, 1933, and the trustees and their successors have since been and are now in possession of and are operating the properties of the company and are the defendants in these cases.

A great amount of evidence has been introduced, largely by means of affidavits and exhibits. The issues have been reduced to two questions which have had the consideration of the court, one of which is decisive of the cases. A brief resume of the pertinent facts will suffice to indicate the reason for the judgments in these cases.

In 1892 the predecessors of the Chicago, Burlington and Quincy Railroad Company (hereafter referred to as the Burlington) and the Chicago, Rock Island and Pacific Railway Company (hereafter called the Rock Island) severally entered into a contract with the Leavenworth Terminal Railway and Bridge Company, the owner of a number of tracks comprising a switch-yard in the City of Leavenworth, Kansas, and also the owner of a bridge across the Missouri river, with certain tracks extending from the bridge a distance of approximately three miles to connections with the Burlington and Rock Island railroads. The Rock Island and Burlington companies operated the yards alternately by years until 1917, when, by mutual agreement, the Rock Island took over the operation of the yards, employing a joint agent and joint employees for the benefit of both railroads.

The plaintiffs Kunz and Perrin, for many years prior to January 14, 1933, had served as switchmen for the Rock Island in the Leavenworth yard. They, with another acting in the same capacity, and an engineer and a fireman, comprised a switch crew. In 1930, the plaintiff Campbell, who had been employed as a roundhouse laborer at Stillings, Missouri, became a switchman and served as such for about a year and one-half. He had not worked regularly as a switchman for about a year prior to January 14, 1933.

Due to the increased use of automobiles, trucks and busses, the business on the Leavenworth branch line of the Rock Island had greatly diminished until it was handling in and out of Leavenworth an average of slightly less than five cars daily. Because of the location of the Burlington main line east of the Missouri river, that company maintained an engine and two crews operating in shifts of eight hours each daily from Leavenworth to the main line connection. The business of that line had also declined and its officers decided that it would handle its own switching by means of the two crews referred to and would avail itself of the cancellation provision of the 1917 agreement, if necessary, in order to do so. They advised the Rock Island of this intention and the Rock Island thereupon arranged with the Burlington for the latter to switch all Rock Island cars on the basis of fifty cents per car. The Rock Island was to discontinue the use of its switch engine and crew, and this plan was made effective at the close of business January 14, 1933. The plaintiffs, as members of the engine crew, were no longer needed and were not after that date used again at any time as switchmen in the Leavenworth yard.

The plaintiffs do not claim that when they entered the service of the Rock Island any contracts of employment other than oral or implied ones were executed, and the terms of those contracts are not in evidence. Both parties have pleaded, and there is in evidence, an agreement dated July 1, 1927, designated by title "Agreement Governing Hours of Service and Working Conditions" and "Rules and Rates of Pay", between the railway company and the Switchmen's Union of North America. This agreement is precisely what its title imports. It sets out in detail the scope of the agreement, rates of pay, rules and working conditions, etc., for switchmen; but it does not contain any contract or agreement whereby any person binds himself to serve, or the railway company binds itself to employ any person or persons. Plaintiffs did not sign the agreement or expressly ratify it; but, for the purpose of this opinion, it may be assumed that the plaintiffs, by accepting membership in the switchmen's union and remaining in the service of the railway company, accepted its terms.

As a result of the length of their service with the Rock Island, plaintiffs had earned a seniority right with the company which entitled them to preference in employment whenever the company called switchmen for work. Under the terms of their employment and the union agreement, however, the exercise of the right was restricted to the Leavenworth yard and was termed "point seniority" or "yard seniority". The switchmen's agreement provided that: "Switchmen and switch-

tenders will not be transferred from one yard to another to the detriment of the switchmen or switchtenders in the yard to which they are transferred." If this seniority right created any obligation on the part of the Rock Island at all, it was merely obligated to call plaintiffs and others for switching in the order of seniority if and when switchmen were called for that type of work in the yard in which their seniority had been earned.

There is in evidence no contract or agreement whereby the railway company obligated itself to afford either permanent employment or employment for a stated length of time to any of its employees or to these plaintiffs, nor is there in evidence any contract or agreement under which any employee agreed to remain in the service of the railway company. The union agreement does not bridge this hiatus; on the other hand, it does anticipate the dismissal of switchmen due to the necessity of reduction of forces and provides that in such cases they shall be laid off "in the order of their employment, beginning with the last switchman employed." In the instant case all Rock Island switchmen in the Leavenworth yard were laid off on the same date. Unfortunately for these switchmen, this union agreement was formulated prior to the development of the perfected collective bargaining contracts of the past few years. These plaintiffs were free to leave the service of the company whenever they desired. This fact brings the parties well within the rule stated in Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S. W.2d 916, 135 A.L.R. 642, where the court, discussing the matter of employment contracts, said: "A universally recognized rule of law is that a contract for permanent employment which is not supported by any consideration other than the obligation of services to be performed on the one hand and wages to be paid on the other is a contract for an indefinite period, and, as such, is terminable at the will of either party. R.C.L., Vol. 18, pp. 509, 510; Corpus Juris, Vol. 39, p. 72; Clay v. Louisville & N. R. R. Co., 254 Ky. 271, 71 S.W.2d 617; Louisville & Nashville R. R. Co. v. Offutt, 99 Ky. 427, 36 S.W. 181, 18 Ky.Law Rep. 303, 59 Am.St.Rep. 467; Perry v. Wheeler, 12 Bush 541." 286 Ky. at page 918, 150 S.W.2d at page 917, 135 A. L.R. at page 644. That rule is so firmly established by the courts almost universally

that it is written in the text of the law of "Master and Servant", 35 Am.Jur. 457, where it is said: "According to the general rule as laid down by a majority of the courts, however, contracts of employment which mention no period of duration, which are in a true sense indefinite and without stipulation for an implied minimum period, are deemed terminable at will of either party; and the burden of proving the contrary must be assumed by the party who asserts that the employee is engaged for a definite period."

Similar views have been expressed by the United States Circuit Court of Appeals for the Tenth Circuit in Boatright v. Steinite Radio Corporation et al, 10 Cir., 46 F.2d 385. That was a suit upon an agreement of employment which was indefinite as to time and which provided for the payment of a fixed sum without providing for the period for which services should continue. In the course of its opinion, the court said: "An agreement of employment, indefinite as to time, is terminable at the will of either party, and therefore creates no executory obligation." 46 F.2d at p. 389. And, again at page 390, of 46 F.2d the court said: "A contract of employment, which provides that the employee shall receive a fixed sum for each day, week, month or year of service but makes no provision as to the time such services shall continue is an indefinite hiring and is terminable at the will of either party." Following each of these expressions of the court are citations of numerous cases from other courts.

The Kansas Supreme Court, in 1941, decided the case of Swart v. Huston, 154 Kan. 182, 117 P.2d 576. That suit arose over an alleged breach of a labor contract between an employer and a labor union, of which the plaintiff employee was a member. In an able opinion by Chief Justice Dawson the court stated: "But a collective bargain between an employer of labor and a labor union does not ordinarily constitute a contract of employment between the employer and any individual member of that union. He and his employer make their own contract impliedly at least if not expressly. The collective bargain between employer and union outlines the general conditions under which the business shall be conducted in respect to wages, hours of labor, working conditions, and matters incidental thereto. Ordinarily the collective bargain does not of

itself make a contract of employment between A as employer and B as workman which either can enforce, or which will furnish the basis for an action for damages if it is breached. This is settled textbook doctrine." This statement is followed by a citation of the decisions of many courts, including Yazoo & M. V. R. Co. v. Webb, 5 Cir., 64 F.2d 902, in which the court had occasion to consider the scope of a contract similar to the one here between a railroad company and a labor union. Of such a contract the court said: "But in itself it can rarely be a subject of court action because it is incomplete. It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to the terms on which contracts of employment may be satisfactorily made and carried out." 64 F.2d at page 903. The Kansas court in Swart v. Huston, supra, denied recovery to the employee who sought relief under the union contract, holding that the union agreement was incomplete and lacked mutuality and other elements of an enforceable contract.

The defendants in the cases now before this court were under no obligation to continue the operation of the switch engine at Leavenworth for the purpose of giving employment to the plaintiffs. It is undisputed that the defendants maintained no switch-engine or switch crew and performed no regular switching service in the Leavenworth yard after January 14, 1933. The court finds that the discontinuance of the switch-engine was brought about because of changing economic conditions for which the Rock Island was not responsible. The withdrawal by the Burlington from the joint switching arrangement was a decision which rested with the managers of that company. The court further finds that there was no contract or agreement between the plaintiffs and the defendants' requiring the plaintiff's employment by the company after the discontinuance of the switch-engine on January 14, 1933. The Rock Island did not replace these men or employ any others as switchmen at Leavenworth after that date.

The court concludes as a matter of law that the plaintiffs have failed to establish a right to recover from the defendants in these cases or to establish any claim upon which relief may be granted.

It has been urged in defense of these actions that whatever causes of action, if any, plaintiffs may have had are barred by the Kansas statute of limitations. The court is inclined to look with favor upon this contention, but finds it unnecessary, in view of the above expressions, to determine its validity.

Judgment will be for defendants and against the plaintiffs for costs.

Findings of fact and conclusions of law have been filed.