FAY MCMANIGAL, Appellant, v. E. L. HIATT, operating under the name of HIATT MOTOR COMPANY, Appellee.

No. 47349.

(Reported in 36 N. W. 2d 651)

APRIL 5, 1949.

542

Cook & Drake, of Glenwood, for appellant.

Gillilland & Thomas, of Glenwood, and Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellee.

MULRONEY, J.—In the Spring of 1940, Fay McManigal and E. L. Hiatt became engaged in the farm machinery business in Glenwood, under an oral partnership arrangement. The business was, to a certain extent, a side line for both partners as Mc-Manigal was a farmer, farming four hundred forty acres of land, and Hiatt was a garageman, having the Ford agency in Glenwood. The farm machinery business went forward for the next few years with McManigal doing the selling and using his farm for demonstration purposes and Hiatt furnishing storage space and doing the office work and using his garage for that purpose. For about three years the business progressed satisfactorily and amiably and it showed some profit.

When war was declared and rationing became effective McManigal, as a salesman, became unnecessary to the partnership business. There was some talk between the partners as to a change in their relationship with the result that on October 29, 1943, a contract of dissolution was executed by the parties which in part stated:

"*Whereas,* it is the desire of the parties, as of this date, to terminate and dissolve the partnership, and

"*Whereas,* the total partnership assets on this date consist of a deposit in the Glenwood State Bank, in the amount of $1324.88, deposited in the account of the H. & M. Tractor Company, and

"*Whereas,* the individual share of the first and second parties in said partnership is fifty per cent each.

"*Now, Therefore,* each of the parties acknowledge an equal division of the partnership property, and each receipts the other for his fifty per cent share therein in full of each party's interest therein.

"*Now, Therefore, in consideration of the above,* it is hereby agreed that the partnership known as the H. & M. Tractor Company be and the same is hereby dissolved and terminated as of this date, with the right on the part of the first party [Hiatt]

to continue in business for a short time under the partnership name, for the purpose of renegotiating contracts, any operations thereafter by first party to be in the name of the Hiatt Motor Company, and with the understanding that hereafter no business shall be conducted by either of the parties as a partnership or in the name of the H. & M. Tractor Company as a partnership.

"In consideration of the above, the first party further agrees that hereafter the second party [McManigal] shall work as a salesman in the sale of tractors and machinery in the conduct of the first party's business as an individual, and the second party is to receive for his services fifty per cent of the net profits derived by first party from the transaction.

... "In consideration of the above, it is further agreed between the parties that as long as any business relationship exists between the parties under this contract, the second party may purchase of the first party for his own use and not for resale, any of the tractors and machinery sold and dealt in by the first party, at the invoice price to first party."

On the day of dissolution McManigal ordered a tractor from Hiatt which was delivered to him the following February, when he had obtained the ration board's consent, and for which he paid Hiatt the wholesale price.

The first dispute between the two ex-partners arose in January of 1944 when McManigal drove to Omaha and picked up a disk at O'Shea-Rogers Tractor & Equipment Company which had been ordered by Hiatt for one of his customers. Hiatt insisted that McManigal bring the disk to the garage. McManigal refused and subsequently Hiatt accepted McManigal's check for the wholesale price of this disk.

In the Fall of 1944, Hiatt was allocated two Woods Brothers corn pickers by the O'Shea-Rogers Company of Lincoln. McManigal and one A. C. Buck had each obtained ration board certificates of eligibility for the purchase of a corn picker. When the first one arrived Hiatt delivered it to Buck. McManigal immediately filed a suit against Hiatt and Buck, alleging the picker was his, and he obtained an injunction against the use of the picker.

Three days later the other picker arrived and it was sold to McManigal at wholesale price and McManigal dismissed his suit. On the same day this picker was delivered to McManigal, Hiatt caused to be served on McManigal a notice to the effect that all relationship of employment or business relationship between them was at an end because McManigal had abandoned the employment provisions of their contract of October 29, 1943; because no employment was ever engaged in under said contract; because the provision for employment was for an indefinite period of time and therefore subject to termination at any time with or without cause; because no business relationship had in fact existed between them for many months; and because McManigal had recently started suit against Hiatt and his customer and therefore interfered with his business.

On April 21, 1945, McManigal filed his petition for declaratory judgment alleging that by said contract, for an additional and valuable consideration other than the services to be performed thereunder, the defendant employed the plaintiff permanently to act as salesman in the sale of tractors and farm machinery, upon a fifty per cent commission basis, and with other privileges as set out in said contract. The petition set forth the claim of Hiatt as embodied in the notice which Hiatt had served on McManigal and the prayer was that the court declare "the present and future rights, status and legal relations of the parties with respect to the claims * * * asserted, and with respect to future rights, obligations and privileges of plaintiff and defendant under the contract."

Defendant's answer, in effect, alleged the employment provision of the contract was not a provision for permanent employment and was cancellable at will; that the contract was not ambiguous and could not be varied by parol evidence; that even if the contract did provide for permanent employment the defendant had good cause to discharge the plaintiff; and that any declaration in favor of plaintiff would not settle the controversy and therefore declaratory relief was inappropriate. The trial court held the contract was not for permanent employment, and could therefore be terminated without cause and that the controversy was one that was not subject to declaratory relief since a declaration in plaintiff's favor would not settle the controversy.

I. Plaintiff first contends the contract was a contract for his permanent employment by the defendant and as such it could only be terminated by the defendant for cause. He supports this contention by an argument that contracts for permanent employment, not terminable except for cause, are valid when supported by consideration additional to the services incident to the employment. Plaintiff then goes on to argue that an additional consideration is present in this case in that the dissolution left Hiatt with the franchise or agency agreement with O'Shea-Rogers Company of Lincoln for the handling of Ford-Ferguson equipment in Mills county. The record shows Hiatt had the franchise with O'Shea-Rogers Company before the partnership; that during the years of the partnership the franchise agreement was with the partners; and after dissolution Hiatt negotiated a new franchise agreement for Ford-Ferguson equipment. Some witnesses testified the agency for Ford-Ferguson equipment in Mills county in 1943 was worth about $5000 but there was no showing the contract was assignable, at least without all parties consenting. It is doubtful if such a contract of agency would have any value in dissolution but even if it did, it is not mentioned in the dissolution agreement.

We need not enter the debate as to whether two considerations are necessary for a permanent employment agreement in a contract for hire—a point of disagreement in the decisions of other courts[*]—for here the first inquiry is whether the contract by its express terms reveals any intent to enter into a contract for permanent employment.

Plaintiff states in his brief that "it is the law that in the consideration of whether the contract is in its nature permanent and not a usual contract of hire, the circumstances surrounding the hiring are most important in the determination of the type of contract intended by the parties." That is true when the contract contains the term "permanent employment" or "life employment" or some other term purporting permanent employment. 56 C. J. S., Master & Servant, 78, section 8c.

---

[*]See dissenting opinion of Justice Oliver in Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa 1249, 1283, 37 N.W. 2d 316, 335. The writer of this opinion would agree with Justice Oliver's conclusion that two considerations need not be shown.

In other words, when the contract uses words or terms that might be interpreted as meaning permanent employment in the sense of steady employment or permanent employment in the sense that it is not terminable except for cause, so long as the employee could perform the work and the employer furnish the employment, there may be resort to conditions, circumstances and usage to aid in the interpretation of the terms in the contract denoting permanent employment. But here there are no terms in the hiring clause denoting an intent that the employment shall be permanent. There are no words or terms that could possibly be construed as showing an intent that a contract for permanent employment was contemplated. Plaintiff points to the word "hereafter" and, admitting that the technical meaning of the word might not mean "permanent", he argues that because of the circumstances and the condition of the parties the word "hereafter" as used in the contract "means permanency, and a substitution of one permanent relation for another permanent relation." The word "hereafter" indicates direction in time and not duration. It is not a synonym for "forever." Webster's New International Dictionary; Dobbins v. Cragin, 50 N. J. Eq. (5 Dick.) 640, 23 A. 172. There simply is not anything in any of the provisions of the contract which indicates the duration of the period of employment.

While evidence of circumstances, conditions and usage surrounding the making of a contract of hire may be considered to interpret words of duration, it is certain such evidence will not be considered to supply a duration provision in a contract of hire. This is but an application of the general rule that precludes varying the terms of a written contract by parol evidence.

Plaintiff did not seek modification. He sought a declaration of rights under the express written contract. That contract in its terms speaks of an ordinary employment, without any fixed duration, and consequently terminable at the will of either party. The decree so declaring was right.

Other propositions are argued but the above holding disposes of the cause so they will not be reviewed.—Affirmed.

HALE, BLISS, OLIVER, GARFIELD, WENNERSTRUM, SMITH, and HAYS, JJ., concur.