**Merritt M. MEREDITH, Appellant,**

v.

**JOHN DEERE PLOW COMPANY OF MOLINE, ILLINOIS, Appellee.**

**No. 16036.**

United States Court of Appeals
Eighth Circuit.

Nov. 20, 1958.

Merritt M. Meredith pro se.

Raymond A. Smith, Council Bluffs, Iowa (Abel V. Shotwell, Omaha, Neb., with him on the brief) for appellee.

Before JOHNSEN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellee brought suit in the District Court for an injunction, to prevent appellant from continuing, commencing or prosecuting any proceeding against it, in state or federal court, attempting to relitigate the same cause of action, or any right, question or fact relating to the subject matter thereof, which had been involved in the decisions of the District Court and the affirmances made thereof by this Court, in Meredith v. John Deere Plow Company of Moline, Illinois, 8 Cir., 185 F.2d 481; Meredith v. John Deere Plow Company of Moline, Illinois, 8 Cir., 206 F.2d 196; and Meredith v. John Deere Plow Company of Moline, Illinois, 8 Cir., 244 F.2d 9.

Appellant is a farm-implement dealer in Iowa, who has also been admitted to the bar of that State. For a period of eight years, he has been subjecting appellee to the annoyance, burden and expense of a continuing series of lawsuits, instituted by him pro se, all of which have been predicated on the theory and claim that appellee has, since 1945, been wrongfully depriving him of the right to handle appellee's line of farm implements and machinery.

In the first suit referred to above, 185 F.2d 481, appellant sought to recover damages in breach for appellee's termination of his alleged oral contract of dealership or agency. The District Court held, 89 F.Supp. 787, that the relationship asserted by him was on its face one that under Iowa law was terminable at will and hence was without any enforceability. We affirmed.

In his next suit, 206 F.2d 196, appellant sought to use the relationship as a basis for an accounting as to the sales of appellee's implements and machinery occurring in the territory subsequent to the termination of his agency. We affirmed the dismissal made of this case, repeating our previous holding that "the agreement upon which the plaintiff relied was not enforceable against the defendant, being terminable at will".

In his third suit, 244 F.2d 9, appellant sought specific performance of the agency relationship, ignoring his initial recognition of a termination having occurred, and refusing also to accord any legal effect to the holding in the two earlier cases that the alleged agreement lacked enforceability.

Throughout all this litigation, appellant has taken the position that he has

the right, and that he intends, to continue to institute suits against appellant to try to obtain a redress of the wrong which he evidently feels has been done him. He appears to be possessed of the notion that the dismissal of one suit on or involving the contract cannot operate to bar another, without a formal trial upon the facts which he claims existed. We tolerantly pointed out to him in our third opinion, 244 F.2d at pages 10–11, that, under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the orders of dismissal made against him operated legally as an adjudication upon the merits of his claim. Lacking enforceability, the agency or dealership agreement necessarily was without basis to support an action, whether in damages, accounting, or specific performance, or any other theory of reach against appellee's termination.

In his answer in the present suit, as well as in his brief here, appellant admits that, until and except for the institution of this injunction suit, he was planning to bring another action against appellee—this time on the theory that appellee had promised never to cancel his agency or dealership; had made that promise without intention to keep it; and so was guilty of a fraud against him. He repeats the statement which he has made in his previous suits that he was induced to do things in reliance upon the non-cancellability of the agency agreement and relationship, which he was not obligated to do, and which should preclude appellant from engaging in termination, either as a matter of lack of right or as a matter of estoppel.

This aspect, which, as noted, has been injected into all of his cases, was expressly dealt with in the trial court's opinion in the first case, Meredith v. John Deere Plow Co. of Moline, D.C.S.D. Iowa, 89 F.Supp. 787, 793–795, where it was held that the fact that appellant might trustingly have made changes or expenditures to promote the sales of appellee's products and the business of the agency, when he had no legal obligation to do so, or that he had agreed not to engage in handling a competitive line of products during the period of his agency, was not sufficient under Iowa law, on the circumstances involved, as against the nature of the agreement generally and its lack of expressed and pervading mutuality otherwise, to transform the agency relationship into a life-time obligation on the part of appellee, while leaving it as one terminable wholly at will in appellant's favor.

In so holding, the court took into account, among other decisions, Lewis v. Minnesota Mut. Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316, where the Iowa Supreme Court had incidentally noted that the situation there involved (as here) was not one of personal employment but of agency relationship, and had declared: "It has been uniformly held that where one party to a contract is not bound to perform it and cannot be held liable for failure of performance there is a lack of mutuality and it is unenforcible". 37 N.W.2d at page 324.

The Iowa Supreme Court further indicated in that case that, even where some other element of consideration might be involved in such a relationship, this would not ordinarily be regarded as having been intended to be permeative of the duration of the agency, so as to give rise to a right in perpetuity against one of the parties, while leaving the other without obligation or with power of termination at will, unless the language of the agreement was itself so unequivocal as not reasonably to permit of any other construction. Id., at page 321. See also Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 221 N.W. 194, 196.

Here, the original agreement, as observed, was without any element of legal consideration, except such as would inhere in the existence of a mutuality of obligation to perform and of lack of right to terminate—which was not present in the situation. The promise which appellant says appellee made not to cancel the agency relationship, and which it is alleged prompted the making of changes and expenditures for business policy and

promotion purposes, as well as a cessation of handling competitive goods, occurred subsequently. And concededly there was involved in this no surrender by appellant of the right on his part to terminate the agency relationship at any time. In this situation, the relationship would still be subject to the rules which have been set out above, except as the law might equitably recognize some exception thereto on the basis of promissory estoppel.

■ There exists however no such sweeping and absolute principle as that "action in reliance is sufficient support for a promise". 1 Williston on Contracts, Rev.Ed., § 140. An obligation cannot be postulated on promissory estoppel, except where "injustice can be avoided only by the enforcement of the promise". Restatement, Contracts, § 90. Such injustice must be so substantial, in relation to and in terms of the particular situation involved, as to constitute serious prejudice (not mere legal detriment as in regular contract formation), or to amount in its effect to constructive fraud or unjust enrichment within traditional equitable concept. Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 273, 48 A.L.R. 2d 1058.

■ The prompting of some changes in business policies and of promotional expenditures, as well as of a cessation of handling competitive goods, are not ordinarily such abnormal incidents in indefinite agency relationship, nor of such general commercial prejudice, as abstractly to give rise to an obligation by promissory estoppel of perpetual dealership representation. And here, on the allegations contained in appellee's various complaints, the situation clearly was without any such substantiality of injustice as to be capable of being regarded as an inequity or fraud entitling appellant to be held to have a life-time obligation against appellee.

Indeed, what appellant claims he did was done 20 years before appellee's termination of the relationship; and the detriment which he alleges that he suffered from it was simply that it "caused (him) trouble and inconvenience" and that he "was under no prior obligation" in respect to it. His theory is, as we have noted and indicated the untenableness of, that anything inducedly done in reliance upon a promise, although it has not been made as the basis of an offer for acceptance in mutual contract relationship, will nevertheless give rise to an estoppel as a species of consideration for legally recognizing an obligation coextensive with the terms of the promise.

We have, however, been engaging here in unnecessary legal discussion, so far as disposition of this appeal is concerned, in an attempt once more to bring home to appellant, in his apparent legal delusion, that he has never had, and can never have, on any possible legal theory, under the facts existing in the situation, a cause of action for the termination made of his agency or dealership, and why it is now necessary, in his threats to continue devising theories on which to sue and harass appellee further, to issue an injunction against him.

While we have thus sympathetically tried to demonstrate to appellant that his cases and contentions have had the full and conscientious consideration of the courts, we should add that the judicial action which the trial court here took, and which is now before us for review, was in any event commanded legally by the adjudications made and inhering in our previous decisions, without regard to the discussion which has been engaged in herewith.

■ As to appellee's right to the injunction issued, the subjecting of another to repeated, baseless and vexatious suits at law on some particular subject matter is, without reference to other considerations, a sufficient ground for the issuance of an injunction against the perpetrator. First State Bank v. Chicago, R. I. & P. R. Co., 8 Cir., 63 F.2d 585, 590, 90 A.L.R. 544; Lee v. Bickell, 292 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337. See also Martin v. Beaver, 238 Iowa 1143, 29 N.W.2d 555, 558.

Appellant's other contentions do not require discussion, for they are on their face without legal merit. As an illustration—among the things urged in appellant's brief is that it is unconstitutional for a federal court to prohibit the institution of a suit in state court, because "The Constitution does not grant to the federal government the power to prevent a state court from performing functions which it is authorized to perform". The obvious answer, of course. is that the injunction issued does not reach at action on the part of a state court but at action on the part of appellant.

Affirmed.