John L. BIXBY et al., Plaintiffs,

v.

WILSON & COMPANY, Inc., Defendant.

Civ. No. 701.

United States District Court
N. D. Iowa,
Cedar Rapids Division.

Aug. 21, 1961.

J. Newman Toomey and W. H. Bartley, Iowa City, Iowa, for plaintiffs.

V. Craven Shuttleworth and Charles A. Hastings, of Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for defendant.

GRAVEN, District Judge.

The plaintiffs in this case are numerous. They are all citizens and residents of the State of Iowa. The defendant is a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of Illinois. Each plaintiff seeks to recover the sum of $20,000 compensatory damages and $60,000 exemplary or punitive damages for breach of contract of employment. The action was originally instituted in the District Court of Iowa in and for Johnson County. Johnson County is in the Southern District of Iowa. The defendant removed the action to the United States District Court for the Southern District of Iowa. By agreement of the parties, the action was transferred to this District. The defendant filed a motion to dismiss. The Court suggested that the motion be treated by the Court as a motion for summary judgment and the parties agreed that it be so treated and it is so treated. Subsequent to the filing of the motion, the plaintiffs amended their complaint. It was agreed by the parties that the defendant's motion should be applicable to the amended complaint.

The plaintiffs assert that the facts in the case are as stated by them in their complaint and in their resistance. In their resistance they outlined at some length the evidence they would present at the trial in support of their claims. For the purpose of passing on the present motion, the Court will assume that the facts are as stated by the plaintiffs and that the evidence outlined by them is true and correct.

The defendant is engaged in the processing of meat products. It has a packing plant at Cedar Rapids, Iowa. It also has packing plants in the States of Minnesota, Nebraska, Kansas, Tennessee, and California. On or about September 19, 1959, many of the defendant's employees at its Cedar Rapids plant went on a strike. The strikers were members of the United Packinghouse Workers of America. After the strike commenced, the defendant proceeded to secure employees to take the places of those on strike. This was done by means of newspaper advertisements, radio and television broadcasts, and by personal interviews. In response thereto, the plaintiffs sought and obtained employment at the defendant's Cedar Rapids Plant. When employed they were informed by those acting for the defendant that their employment would be permanent. Some of the plaintiffs did not reside in Cedar Rapids and they made inquiry of those acting for the defendant

as to the matter of moving their families to Cedar Rapids. Some made inquiry of those acting for the defendant as to the matter of purchasing a home in Cedar Rapids. Some of the plaintiffs were farm tenants. They made inquiry of those acting for the defendant as to giving up their farm leases. In response to their inquiries, those acting for the defendant assured the inquirers that their employment would be permanent. Those acting for the defendant called the plaintiffs together on several occasions and stated to them: "You may have been told that you are going to be laid off when the strike is ended. We are here to tell you you are going to be kept on regardless." In reliance upon the promise of the defendant of "permanent employment," some of the plaintiffs gave up other jobs; some moved to Cedar Rapids at heavy expense and others gave up farm leases.

On February 16, 1960, the defendant and the United Packinghouse Workers of America entered into what is known as an "Interim Agreement" for the settlement of the strike. Part "B" of the agreement is entitled "Arbitration Agreement." That agreement provided, in part, as follows:

"Whereas, the parties hereto have an existing controversy between them relating to the status of strikers and of employees hired as replacements since the strike by the union against the company; and

"Whereas, the company position is that:

" 'All striking employees, except those who have engaged in unlawful or unprotected activities, shall be:

" 'a. Returned to work in line with length of service and need in their former department to the extent that jobs are available at the time of settlement of the strike. Employees returned to work within two full calendar weeks after the settlement date of this strike shall be considered to be in this category; or

" 'b. Placed on a preferential hiring list for a period of two years to be rehired in line with length of service and need in their former department. Such employees, when and if recalled for regular employment, will retain their previous continuous service rights and credits as of the date they went on strike for all purposes except seniority. For employees rehired under the provisions of this paragraph, seniority will date from the date such employee is rehired;' and

"Whereas, the union position is that:

" 'All employees should be returned to work without discrimination and in accordance with their seniority rights, and with all rights restored.' "

The agreement provided for three arbitrators: one appointed by the Company, one appointed by the Union, and one selected by those two arbitrators. The agreement further provided that in the event those two arbitrators were unable to agree on a third arbitrator, the third one was to be appointed by the Chief Judge of the United States District Court for the Northern District of Illinois from among the Judges of that District.

The agreement further provided, in part:

"2. The Board of Arbitration shall have the power to decide, in the light of all the equities and all facts and considerations deemed by the Board to be relevant, the fair and proper disposition of all issues in respect to all employees affected by the controversy between the parties as above described * * *."

The arbitrators named by the Company and the Union were unable to agree upon a third arbitrator and, therefore, the Chief Judge of the United States District Court for the Northern District of Illinois designated The Honorable Joseph Samuel Perry, a Judge of that Court, as the third arbitrator.

On March 10, 1960, the Board of Arbitration rendered its decision. Two of the arbitrators, the arbitrator appointed by the Union and Judge Perry, concurred in the decision, the substance of which was that those of the defendant's employees who went on strike would have seniority over those employed by the defendant during the strike. The arbitrator appointed by the Company refused to concur in the award. He stated in a special statement that the effect of the award was to nullify the assurances given by the defendant to those who were employed during the strike.

On March 11, 1960, following the decision by the Board of Arbitration and pursuant to that decision, the defendant terminated the employment of the plaintiffs. The plaintiffs then instituted this action. They charge that the defendant wrongfully breached their contracts of employment.

All of the plaintiffs seek to recover damages (1) "By loss of future earnings from the Defendant"; (2) "By loss of seniority, promotions, retirement, vacations, sick leave, insurance protection and other benefits of employment at Defendant's plant." Some of the plaintiffs seek to recover as additional damages the expenses incurred by them in moving to Cedar Rapids. Others seek to recover as additional damages the damages suffered by them in giving up other employment and farm leases. In the plaintiffs' complaint they also charge the defendant with conspiracy. However, it is the well-settled Iowa law that a conspiracy does not give rise to a civil action, unless something is done pursuant to it which, without the conspiracy, would create a right of action. Shannon v. Gaar, 1942, 233 Iowa 38, 6 N.W.2d 304, 307. If the defendant in terminating the employment of the plaintiffs merely did what it had a legal right to do, it would not be liable to plaintiffs. Shannon v. Gaar, supra.

It is the contention of the defendant that the allegations in the complaint of the plaintiffs and the facts stated by them in their resistance show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

In the present case the plaintiffs, as above noted, seek to recover damages for a breach of a contract of employment. The right of a plaintiff to damages is dependent on the contractual concepts of the state whose law is applicable. Tinnon v. Missouri Pacific R. Co., 8 Cir., 1960, 282 F.2d 773, 775. In the present case jurisdiction is based upon diversity of citizenship and the applicable law is that as declared or indicated by the Iowa Supreme Court. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In the case of Hablas v. Armour and Co., 8 Cir., 1959, 270 F.2d 71, the plaintiff sought to recover damages for the alleged wrongful termination of his contract of employment. The Court stated (270 F.2d at page 78):

"Plaintiff, to prevail, must plead and prove that defendant in terminating his employment has violated some duty defendant owed to plaintiff. Plaintiff's pleading is that defendant has discharged plaintiff without having good cause so to do. We look to the employment arrangements which existed to determine plaintiff's right to continued employment."

In order for a plaintiff to recover damages from a defendant for breach of contract, the situation must be such that a contract came into existence under which the defendant became bound to fulfill a definite obligation or definite obligations to the plaintiff and that there was a failure on the part of the defendant to perform such obligation or obligations. To determine whether such was the situation in this case requires a consideration of a number of matters. The first matter to be considered is that of offer and acceptance. The defendant made each of the plaintiffs an offer of "permanent employment." In order for that offer to result in a contract, there must

have been an acceptance of that offer by the plaintiffs. The plaintiffs might have accepted that offer by making express responsive counter-promises. They do not claim that they did so. It appears that the plaintiffs in response to the offer of the defendant did enter the employment of the defendant and continued in that employment until discharged. It is well-settled contract law that an offer may be accepted by an act. If it be considered that the plaintiffs by entering the employment of the defendant in response to the offer of the defendant did accept the offer of the defendant, there is then presented for consideration the nature and character of the obligation assumed by the plaintiffs and the defendant. The nature of that obligation would seem to depend upon the contractual concept to be ascribed to the term "permanent employment." The courts are not in agreement as to what contractual concept is to be ascribed to the term "permanent employment." There is an extensive annotation on the matter of the duration of a contract purporting to be for permanent employment in 35 A.L.R. 1432 (1925), supplemented by an annotation in 135 A.L.R. 646 (1941). A contract purporting to be for permanent employment has been considered to be employment for a reasonable period. See Fibreboard Products, Inc. v. Townsend, 9 Cir., 1953, 202 F.2d 180, 182 (California law). Such a contract has been considered as meaning that the employee is to be employed as long as he does his work properly and the employer continues to be engaged in the business to which the hiring is related. Stevens v. G. L. Rugo & Sons, 1 Cir., 1953, 209 F.2d 135; 138 (Massachusetts law).

At 35 A.L.R. 1432, the editorial writer makes the following statement:

"In most of the jurisdictions passing on the duration of a contract purporting to be for permanent employment, it is held that, in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring terminable at the will of either party."

A number of cases are cited following the statement, including the case of Faulkner v. Des Moines Drug Co., 1902, 117 Iowa 120, 90 N.W. 585. In that case, the plaintiff entered into a written contract of employment with the defendant for employment in a drug store operated by the defendant. The contract provided that it was to remain in effect until "mutually agreed to be void." The defendant discharged the plaintiff and he thereupon sought to recover damages for the wrongful termination of his employment. The trial court sustained a demurrer to the petition. On appeal that ruling was affirmed. In its opinion the Court cited a number of cases in support of the proposition that a contract for "permanent employment" is construed to mean nothing more than that the contract is to continue indefinitely and until one or the other of the parties desires to sever the relationship.

In Lewis v. Minnesota Mut. Life Ins. Co., 1949, 240 Iowa 1249, 37 N.W.2d 316, the plaintiff sought to recover damages for breach of an agency contract. It was the claim of the plaintiff that the defendant had orally agreed to retain him as an agent during his lifetime. The jury returned a verdict in favor of the plaintiff. The trial court granted the motion of the defendant for judgment notwithstanding the verdict. On appeal that ruling was affirmed by a divided court. There were long majority and minority opinions in which many phases of the law in connection with lifetime and permanent employment were discussed. However, in both the majority and minority opinions there are set forth statements to the effect that, absent certain features, a contract although purporting to be one for "permanent employment" is regarded as

a contract terminable at will by either party.

One of the leading cases in support of this rule is the case of Skagerberg v. Blandin Paper Co., 1936, 197 Minn. 291, 266 N.W. 872. That case is cited in the majority opinion in the Lewis case. The rule in the Skagerberg case was followed by the Minnesota Supreme Court in the recent case of Degen v. Investors Diversified Services, Inc., 1961 Minn., 110 N.W. 2d 863. In the case of Lee v. Jenkins Brothers, 2 Cir., 1959, 268 F.2d 357, 368, the Lewis case is cited as holding that the contract involved in that case was unenforceable because of indefiniteness and because of lack of consideration and mutuality. In the Lee case the Court (268 F.2d at page 368) states that the courts have manifested hostility to enforcing contracts similar to the contract in the Lewis case.

■ An offer may be validly accepted and still not give rise to an enforceable contract because of indefiniteness as to obligation. Drake v. Block, 1956, 247 Iowa 517, 74 N.W.2d 577, 580; Lewis v. Minnesota Mut. Life Ins. Co., 1949, 240 Iowa 1249, 37 N.W.2d 316, 321. The reason given for the rule is that where a contract is lacking in definiteness as to duration there is no adequate basis for the ascertainment of damages. That question is also of importance on the question of mutuality of obligation. The case of Drake v. Block, 1956, 247 Iowa 517, 74 N.W.2d 577, involved an action by employees against an employer for damages for termination of their employment. The Iowa Supreme Court stated (74 N.W.2d at page 580):

"Under the undisputed testimony the oral contract of employment was unilateral. That is, it is one in which one party made an express agreement or undertaking without receiving in return any express agreement or promise of performance. * * * The law is well settled that mutuality of obligation must exist in order to create a contract of employment that is binding and enforceable, short of execution.

* * * Where a contract of employment is indefinite as to time, the same lacks mutuality and may be terminated at will by either party without incurring liability. * * *"

The case of Standard Oil Co. v. Veland, 1929, 207 Iowa 1340, 224 N.W. 467, involved the validity of a contract for the leasing of a filling station which reserved to the plaintiff oil company the right to terminate it at will upon ten days' notice. The Iowa Supreme Court stated (224 N. W. at pages 468, 469):

"Turning to the first proposition stated, the argument is that, because the contract reserved to the plaintiff the right to terminate at will upon 10 days' notice, and because it failed to reserve such privilege to the defendant, therefore the contract lacked mutuality, and was unenforceable. The point is not tenable. Some confusion of statement may be found in the books on this subject. If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality in and of itself does not render a contract invalid. If mutual promises be the mutual consideration of a contract, then each promise must be enforceable in order to render the other enforceable. Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise. A promissory note for a consideration is valid, though no mutuality appear thereon. This is true of all unilateral contracts which are supported by a consideration."

The existence of and sufficiency of an executed consideration are involved in the determination of the present controversy.

Cases involving the termination of dealer franchise contracts present problems quite similar to those presented in the present case. In such cases, decisions having to do with purported contracts for permanent or lifetime employment have been frequently cited and relied on. Many of the dealer franchise

agreements provide for their termination at will by the manufacturer. Where the dealer has expended considerable sums in providing for the carrying out of the franchise, hardship may be caused to him by an early termination of the franchise. Automobile dealers have been given a substantial measure of protection by the recent enactment by Congress of the so-called Dealers' Act, 15 U.S.C.A., §§ 1221–1225. That Act is set forth and discussed by this Court in the case of Schnabel v. Volkswagen of America, Inc., D.C.1960, 185 F.Supp. 122. Some courts, apart from statute, have alleviated the hardship caused to franchise dealers who have entered into franchise contracts terminable at will or upon short notice and who have made substantial expenditures in promoting the agency by holding that the dealership was to be continued for a reasonable time in order to permit the dealer to recoup those expenses. Typical of those cases are the cases of Gibbs v. Bardahl Oil Co., Mo.1960, 331 S.W.2d 614; Allied Equipment Co. v. Weber Engineered Products, Inc., 4 Cir., 1956, 237 F.2d 879.

There are no Iowa statutes relating to the termination of dealer franchises. However, the Court of Appeals for this Circuit has recently given consideration to the Iowa law on the subject of franchise agreements in connection with which it relied upon the Iowa cases of Faulkner v. Des Moines Drug Co., 1902, 117 Iowa 120, 90 N.W. 585, and Lewis v. Minnesota Mut. Life Ins. Co., 1949, 240 Iowa 1249, 37 N.W.2d 316, heretofore referred to, which are regarded as being the leading Iowa cases on the matter of purported contracts for permanent or lifetime employment. Those cases were considered by the Court of Appeals in the well-known Meredith litigation.

The first decision in that litigation was the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 1950, 185 F.2d 481, certiorari denied, 1951, 341 U. S. 936, 71 S.Ct. 856, 95 L.Ed. 1364. The plaintiff Meredith sought to recover damages for a breach of an oral sales agency agreement. The defendant moved to dismiss the action on the ground that the complaint failed to state a claim upon which relief could be granted. The District Court sustained the motion on the ground that the contract was unenforceable for want of mutuality, indefiniteness as to term, and lack of adequate consideration. Meredith v. John Deere Plow Co. of Moline, Illinois, D.C.S.D.Iowa 1950, 89 F.Supp. 787. The District Court cited and relied upon the cases of Faulkner v. Des Moines Drug Co., supra, and Lewis v. Minnesota Mut. Life Ins. Co., supra, in support of its ruling. On appeal that ruling was affirmed. It appeared from the allegations of the complaint that the plaintiff's father, C. P. Meredith, had been engaged in the operation of a farm implement store; that the defendant solicited C. P. Meredith to become its agent for the sale of its implements; and that the defendant agreed that if C. P. Meredith would desist from his competition with the defendant and his hostility to its products and become defendant's agent, that agency would continue until he voluntarily relinquished it. In the complaint it was further alleged that the plaintiff had succeeded to the rights of his father, C. P. Meredith, under the oral contract of agency and that he and his father had expended large sums of money in promoting the agency. In the complaint it was further stated that the defendant had wrongfully terminated the agency. In affirming the dismissal, the Court of Appeals stated in 185 F.2d at page 482:

"\* \* \* The contract differed in no controlling respect from the agency contract involved in the case of E. I. DuPont de Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238, in which this Court held that such a contract is terminable at will by either party, and that, since the agent is under no obligation to continue to represent the principal, the termination of the contract by the latter is not a breach of the contract and will not sustain an action for damages. \* \* \*"

The Court further stated in 185 F.2d at page 482:

"Since the substantive law applicable to this case is that of Iowa, we are required to follow the law of that State. The law of Iowa, however, with respect to contracts of the type of that in suit conforms to the law which is generally applicable and upon which this Court has relied. Faulkner v. Des Moines Drug Co., 117 Iowa 120, 90 N.W. 585; Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa, 1249, 37 N.W.2d 316, 324–325.

"The contract in suit had obvious congenital weaknesses which rendered it unenforceable as to the future and made it subject to termination by either of the parties at will without incurring liability for damages to the other."

In the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 1953, 206 F.2d 196, certiorari denied, 1953, 346 U.S. 898, 74 S.Ct. 223, 98 L.Ed. 399, the action of the trial court in dismissing a new action growing out of the same transaction was affirmed. In the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 1957, 244 F.2d 9, certiorari denied, 1957, 355 U.S. 831, 78 S.Ct. 44, 2 L.Ed.2d 43, it was held that the plaintiff's complaint, which then alleged that there were subsequent assurances by the defendant that it would live up to the terms and conditions of the purported agreement, was properly dismissed by the District Court since such assurances created no legal liability. In the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 1958, 261 F.2d 121, certiorari denied, 1959, 359 U. S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574, Meredith was enjoined from bringing further actions based on the same claim. In that case the Court, after referring to the opinion of the District Court in 89 F. Supp. 787, stated (in 261 F.2d at page 123) that in that case:

" * * * it was held that the fact that appellant might trustingly have made changes or expenditures to promote the sales of appellee's products and the business of the agency, when he had no legal obligation to do so, or that he had agreed not to engage in handling a competitive line of products during the period of his agency, was not sufficient under Iowa law, on the circumstances involved, as against the nature of the agreement generally and its lack of expressed and pervading mutuality otherwise, to transform the agency relationship into a life-time obligation on the part of appellee, while leaving it as one terminable wholly at will in appellant's favor."

The Court, after referring to the opinion in the case of Lewis v. Minnesota Mut. Life Ins. Co., supra, goes on to state in 261 F.2d at page 123:

"The Iowa Supreme Court further indicated in that case that, even where some other element of consideration might be involved in such a relationship, this would not ordinarily be regarded as having been intended to be permeative of the duration of the agency, so as to give rise to a right in perpetuity against one of the parties, while leaving the other without obligation or with power of termination at will, unless the language of the agreement was itself so unequivocal as not reasonably to permit of any other construction. * * * See also Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 221 N.W. 194, 196."

The scope of the rules stated and the precise holdings of the Iowa Supreme Court in the Faulkner and Lewis cases are far from being free from doubt. It is to be noted that the Faulkner case did not directly involve the questions here presented and that the statement that a contract for "permanent employment" was to be construed as a contract terminable at the will of the parties was in the nature of dictum. It is also to be noted in connection with the Lewis case that it was a decision by a sharply divided court and that in that case there were present the features of whether the al-

leged promise was in fact made at all and the authority of the officer of the defendant to make such a promise. The majority opinion contains many statements set forth by way of general discussion, several of which have been heretofore referred to. Some of these statements must be regarded as being in the nature of dictum. However, federal courts in ascertaining local state law may, in the absence of a direct holding by the appropriate state appellate court, resort to dictum or dicta of that court as indicating the local state law. It is to be noted that the Lewis case involved a purported "lifetime" contract. A number of courts have manifested hostility towards contracts which are asserted to be of lifetime duration. Lee v. Jenkins Brothers, 2 Cir., 1959, 268 F.2d 357, 368. However, in 35 A.L.R. 1432, the rule heretofore set out is stated as being applicable to both purported contracts of "permanent employment" and "lifetime employment." In some cases involving purported "permanent employment," it is the claim of the employee that the contract was to continue as long as he was able to perform the services which would in effect be employment for his work life period. In the present case the plaintiffs, among other claims for damages, assert damages because of loss of retirement rights which might indicate that it is their claim that the employment was to continue during their work life period. However, the question as to the duration of "permanent employment" depends upon the meaning to be given to or the contractual concept to be ascribed to the term "permanent employment" under the applicable state law. The statements of the Court of Appeals for this Circuit in the Meredith cases heretofore referred to indicate that it is the view of that Court that under the decisions of the Iowa Supreme Court in the Faulkner and Lewis cases it is the Iowa law that, absent an additional good consideration, a contract for "permanent employment" is lacking in mutuality and is a contract terminable at the will of the parties.

In the Meredith cases some of the phases of the mutuality of obligation were considered. There are some other phases which will next be considered. In 1 Corbin on Contracts, p. 498, it is stated:

Mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each made a promise and each is an obligor. This is the meaning with which the term is commonly used. There are cases, however, in which it is otherwise disregarded. In order to save the requirement of 'mutuality' it is sometimes declared that it means nothing more than there must be a sufficient consideration even though one of the parties has made no promise and is bound by no duty, the contract has sufficient mutuality if he has given an executed consideration. Thus, the validity of a unilateral contract is recognized, but at the same time appearing not to run counter to the requirement of mutuality. While the result reached in those cases is sound, such a method of rationalizing it merely perpetuates confusion of thought. There are plenty of cases that recognize the validity of a unilateral contract. Courts now clearly saw that it is the consideration that is necessary not the mutuality of obligation. * * * If an executed consideration is given by the promisee, a promise of employment is not rendered unenforceable by the fact that the employment is to continue permanently or for an indefinite period or as long as the worker wishes to stay. The employee is not bound; but the employer is bound. There was no mutuality of obligation but there was other sufficient consideration."

In the present case, as heretofore noted, it is not claimed that any of the plaintiffs made any express responsive promise by which they assumed any obligation as to continuing in the employment of

the defendant in the future. The plaintiffs could, of course, have impliedly assumed an obligation to continue in the employment of the defendant in the future, or it could be assumed that the plaintiffs merely by entering the employment of the defendant did accept the defendant's offer of "permanent employment." This would still leave a question as to what the defendant bound itself to do as to continuing the employment of the plaintiffs in the future. Section 622.22, Code of Iowa 1958, I.C.A., provides:

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

In the present case it was the understanding of the plaintiffs that they were to have "permanent employment," and it was the expressed intention of the defendant that the plaintiffs were to have "permanent employment." However, such only leads back to the question as to what the parties understood and intended by the use of the term "permanent employment." In 18 R.C.L. 509, the general rule is stated as follows:

"In case the parties to a contract expressly agree that the employment shall be 'permanent,' the law implies not that the employment shall be continued or for any definite period, but that the term being indefinite the hiring is merely at will."

In 56 C.J.S. Master and Servant § 8, p. 78, it is stated:

"* .* * where the intent to enter into a contract for permanent employment, not terminable except pursuant to its express terms, is not clearly expressed, and there is no evidence showing consideration other than a promise to render service, the assumption will be that, even though the parties speak in terms of permanent employment, the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party."

As heretofore noted, the Iowa rule appears to be in accord with the general rules just stated in R.C.L. and C.J.S., supra. Under those rules the term "permanent employment" is regarded as so lacking in definiteness as to the duration of employment that a purported agreement for "permanent employment" is regarded as resulting in a hiring terminable at will of the parties, and the parties are presumed to have so intended.

In 1 Corbin on Contracts, p. 298, the author, in discussing employment contracts, states:

"If on proper interpretation the parties intend that performance is terminable at will by either party, and there is no executed consideration, the agreement is not a contract at all. Yet it is not vague or unclear. It is merely an expression in which the promises are illusory, since refusal to perform is not a breach, being merely the exercise of the reserved power to terminate!"

It is readily noticeable that most courts, in connection with contracts for purported permanent or lifetime employment, tend to be more restrictive in the matter of the intent of the parties than they are in contracts relating to other matters. Most courts, in passing upon contracts for purported permanent or lifetime employment, have shown a reluctance to imply an intent on the part of the parties to bind themselves far into the future. Such contracts involve personal services. The capability of an employee to continue to render personal services for an unusually long period of time is subject to many variables. The uncertainties and vicissitudes of business are such that an obligation to pay compensation for an unusually long period could constitute a very onerous obligation.

There is another phase that should be considered. In Corbin on Contracts, supra, it is pointed out that there can be situations in which it is regarded that

the employer promised an employee employment as long as he wishes to stay without any counter-promise by the employee to continue in the employment. It is clear that in such a situation that, apart from executed consideration, the contract cannot be enforced by the employee. However, as pointed out in Corbin on Contracts, supra, if the employee has given a valid executed consideration, the situation would be that the employer would be bound to employ the employee as long as the employee wished to stay but the employee would not be bound. That could be the situation where an employee invested money in the employer's business or the promise of the employer was made by way of settlement of a claim for personal injuries. An example of the latter situation is the case of Jessup v. Chicago & N. W. Ry. Co., 1891, 82 Iowa 243, 48 N.W. 77.

It has been said by many courts that two considerations are required in this type of situation. See Lewis v. Minnesota Mut. Life Ins. Co., supra, 37 N.W.2d at pages 333, 335; McManigal v. Hiatt, 1949, 240 Iowa 541, 36 N.W.2d 651, 653 (footnote 1); Littell v. Evening Star Newspaper Co., 1941, 73 App.D.C. 409, 120 F.2d 36. The promise to render the services or the rendering of the services would seem to be regarded as one consideration and the giving of consideration apart therefrom would be regarded as the other consideration. While the other consideration could be an existing promise, yet in most of the cases in which the question has arisen the other consideration was consideration which had been executed. In this connection, reference should be made to the case of Eggers v. Armour & Co. of Delaware, 8 Cir., 1942, 129 F.2d 729, decided by the Court of Appeals for this Circuit. The decision in that case has been considered by some as holding that under the Iowa law a second consideration is not required. In that case the plaintiff claimed that he and his employer had entered into a contract under which he was to have lifetime employment. He was discharged. He then brought an action for damages for a breach of his contract of employment. The plaintiff had alleged in his complaint that the agreement was made for the purpose of settling his claim for damages for personal injuries but at the close of the evidence that allegation was withdrawn. At the end of the plaintiff's case, the trial court directed a verdict in favor of the defendant. On appeal the case was reversed. The Court stated in 129 F.2d at page 731:

"* * * The rule is that a contract for lifetime employment will be given effect, according to its terms, if the intention of the parties to make such an agreement is clear, even though the only consideration for it, so far as the employer is concerned, is the promise of the employee to render the service called for by the contract. * * *"

The Court stated that the Iowa law was applicable. In an article by David L. Sayre entitled, A Review of Iowa Contract Law: 1942–1952, 38 Iowa Law Review 506, the author states (p. 520) that the holding of the United States Court of Appeals for this Circuit as to the Iowa law in the case of Eggers v. Armour & Co. of Delaware, supra, is not in accord with the views of the Iowa Supreme Court as stated in the later case of Lewis v. Minnesota Mut. Life Ins. Co., 1949, 240 Iowa 1249, 37 N.W.2d 316. In an article by Professor Richard S. Hudson, Doctrine of Consideration in Iowa Revisited—The Bargain Element, 5 Drake Law Review 67 (1956), the author (p. 80, footnote 43), after referring to the decisions of Lewis v. Minnesota Mut. Life Ins. Co., supra, and Eggers v. Armour & Co. of Delaware, supra, indicates it is his view that the holdings in the two cannot be reconciled. It is the present view of the Iowa Supreme Court that is determinative as to the Iowa law in this area and, as heretofore noted, it would seem to be the present view of that Court that consideration additional to the contracting for the services or the rendering of the services is required to bind the employer.

■ It seems clear that under the Iowa law those plaintiffs in the present case who did nothing in response to the defendant's offer except enter the employment of the defendant have no legally enforceable claims against the defendant. However, as heretofore noted, some of the plaintiffs, in reliance upon the assurances of the defendant that they would have permanent employment, gave up farm leases; others gave up other employment, and others incurred heavy expense in moving to Cedar Rapids. Thus, there is presented the matter of whether such plaintiffs are to be regarded as having given good additional consideration. It seems clear that the giving up of farm leases, the giving up of other employment, and the incurring of expense in moving to Cedar Rapids constituted detriment to them. The question then is whether any of the detriments constituted good additional consideration within the scope of the rule referred to. There are no direct Iowa holdings on the question of whether the giving up of other employment and the incurring of expense in moving to the place of employment constitutes such consideration. In cases in which the federal courts are seeking to ascertain the local state law, and there are no direct holdings by the state appellate court or courts, resort may be made to statements of such court or courts, indicating the possible views of such court or courts on the question or questions involved even though such statements may have the status of dicta.

In the case of Lewis v. Minnesota Mut. Life Ins. Co., supra, the plaintiff claimed that he had given up other business opportunities in reliance on the promise of the defendant and that the giving up of those opportunities constituted good additional consideration for the agreement apart from the rendering of the services. The Iowa Supreme Court held that it did not. That Court, in discussing that claim of the plaintiff, stated (at page 323 of 37 N.W.2d):

"It is claimed that the promise to turn down the other offers finds support in certain cases cited, none of which holds that the mere rejection of other offers of employment as distinguished from the giving up of actual existing employment or an independent business constitutes such an additional consideration."

In the same case the Court stated (at page 322 of 37 N.W.2d):

"* * * It was held in Rape v. Mobile & Ohio Railroad Co., 136 Miss. 38, 100 So. 585, 35 A.L.R. 1422, 1427, that the expense incurred by an employee in moving to the place of employment did not constitute a sufficient consideration to support a claimed agreement for permanent employment. For annotations bearing on this question reference is here made to 35 A.L.R. 1432 and 135 A.L.R. 646. See, also, Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S.W.2d 916, 135 A.L.R. 642, 644, 645.

"* * * The giving up of the opportunity to take other employment cannot be held to be an additional consideration. Skagerberg v. Blandin Paper Co., 197 Minn. 291, 266 N.W. 872. * * *"

■ The case of Edwards v. Kentucky Utilities Co., supra, referred to by the Iowa Supreme Court in the statement just set out, is the leading case in support of the rule that the giving up of a job by an employee in response to an offer of permanent employment is not such a consideration as will support a claimed contract for permanent employment. The case of Rape v. Mobile & Ohio Railroad Co., supra, referred to by the Iowa Supreme Court in the statement above set out, is the leading case in support of the rule that expense incurred by an employee in moving to the place of employment is not such a consideration as will support a claimed agreement for permanent employment. In the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 261 F.2d 121, at page 123, heretofore discussed, the Court of Appeals in discussing the Lewis case, supra, in which the claimed additional

consideration was the rejecting of offers from other companies, stated that the Iowa Supreme Court was of the view that the claimed consideration was not "permeative" as to the duration of the contract. It would seem the courts which hold that the rejection of offers of other employment, the giving up of other employment, and the moving to the place of employment do not constitute good additional consideration regard those matters as normally incident to contracts of employment in general and not as being "permeative" of the duration of the contract. When the question comes directly before the Iowa Supreme Court, it would seem that it is more likely to hold that the giving up of other employment and the incurring of expense in moving to the place of employment does not constitute good additional consideration than it is that it would hold to the contrary.

There are two recent cases which should be referred to. The recent case of Thompson v. Miller, 1960, 251 Iowa 324, 100 N.W.2d 410, was an action for damages for the breach of a claimed permanent or lifetime contract. The defendant was a manufacturer of hitch pins. The plaintiff and the defendant entered into a contract under which the plaintiff was to engage in the sale of those pins upon a commission basis. The contract specified that it applied to every hitch pin made by the defendant regardless of how and to whom it was sold. After the plaintiff had been engaged in the sale of the hitch pins for some time, the defendant sold its business. Its vendee refused to recognize any contractual obligation to the plaintiff. The plaintiff claimed that his contract was to be permanent or for his lifetime. The Iowa Supreme Court held that the evidence was such as to make a case for the jury. That Court stated at page 412 of 100 N.W.2d: "In this case more is involved than mere services. Plaintiff paid half of the advertising and sales costs and all of his traveling expenses. He thus had a capital as well as a labor investment." The Court cites the case of Lewis v. Minnesota Mut. Life Ins. Co.,

supra, in support of the proposition that a contract for life will be enforced if clearly expressed in unequivocal terms. The Court does not make any other reference to the Lewis case. The Court does not state that it considered its holding in the Thompson case to be contrary to any of its holdings in the Lewis case. While the decision in the Thompson case could be considered as indicating that the Iowa Supreme Court had departed from the views expressed by it in the majority opinion in the Lewis case, yet in the absence of further clarification by that Court it would seem that it could not be said with assurance that it has so departed.

The case of Albers v. Wilson & Co., D.C.Minn., 184 F.Supp. 812 (Judge Donovan) involved the claims of employees who were employed at the defendant's plant at Albert Lea, Minnesota, during the same strike that is involved in the present case. Those employees, like the plaintiffs in the present case, entered into the employment of the defendant during the strike under assurances that their employment would be permanent. They, like the plaintiffs in the present case, had their employment terminated following the arbitration award referred to. In the Minnesota case the employees claimed that additional consideration was given because the strike was surrounded by much violence and that any person who went to work at the defendant's plant was subject to harm to his person and property. The Court held that such did not constitute the additional consideration contemplated by the Minnesota decisions and that the contracts of employment were terminable at the will of the defendant.

It is noticeable that the courts are loath to impute an intent on the part of an employee to enter into a contract of employment obligating him to serve the employer during his lifetime or for a period extending far into the future. Absent such an obligation, an employee seeking to enforce a purported contract for permanent or lifetime employment against his employer encounters difficulty

in the matter of mutuality and consideration. To avoid those difficulties, the employee frequently seeks to establish a contract of employment which the employer is bound to continue indefinitely but he is not. In order to uphold the validity of such a contract, the employee frequently relies upon claimed additional consideration or considerations given by him apart from the rendering of the service.

It would seem that under the general rule, which is also the Iowa rule, that where the parties enter an agreement purporting to be for "permanent employment," the law will nevertheless imply that the parties intended only a contract terminable at the will of the parties. It would also seem that most courts will not imply a contrary intent or permit the trier of facts to imply a contrary intent until and unless there is good consideration given by the employee in addition to the rendering of the services. It would further seem that those courts which follow that rule hold that where the essential circumstance of additional good consideration is present that that circumstance and the other circumstances are to be considered by the trier of facts for the purpose of ascertaining whether the parties did or did not intend that the employment be terminable at the will of the employer. While it would seem that in such a situation the giving of good additional consideration is only one of the circumstances bearing on the intent of the parties, yet those courts which follow the rule referred to regard it as being such an important circumstance that absent it they will not imply or permit the implication that a contract purporting to be for "permanent employment" is not terminable at will. This would seem to be the fair meaning of the Lewis decision.

It was heretofore noted that it seemed probable that when the Iowa Supreme Court had directly presented to it the question as to whether the considerations in the present case constituted good additional considerations within the scope of the rule referred to, it would hold that

they did not. Therefore, in the present case, the essential circumstance of good additional consideration would seem to be lacking.

Even though in a particular case it should be established that the employee had given an additional good consideration in connection with an agreement for "permanent employment," some troublesome questions could present themselves. It has been heretofore noted that a contract for employment which is lacking in definiteness as to its duration cannot be enforced because there is no basis upon which the trier of the facts may ascertain the damages for the breach thereof. If there is a good additional consideration in connection with "permanent employment," there is still left the question as to what duration of employment is to be used as a standard for ascertaining damages.

There might be several possible durations for a contract of "permanent employment." Among those could be employment for a reasonable period; employment for life; for as long as the employee was able to perform the services (his work life); for as long as the employee's services were satisfactory; for as long as employment was available in the business with which the employment was connected.

It would seem that in an action by an employee for damages for breach of a contract for purported "permanent employment" tried to a jury, the jury would, in the light of the evidence, have to be instructed as to which of the possible durations of employment they might adopt in determining the amount of damages to which the employee was entitled. There would be present in that situation opportunity for confusion and difficulty of administration. It would seem to make for the avoidance of confusion and for less difficulty of administration if in cases involving contracts for "permanent employment" the rule were that where there was found to be present the feature of additional consideration it would be implied that the parties intended the employment to be continued for a reasonable period and in determining that

period the trier of the facts should consider all of the surrounding circumstances, including such circumstances as the probable continuing ability to perform the services and the probable continuing need of employer for such services in the business to which the employment related.

The plaintiffs cite and rely upon, among other cases, the case of National Labor Relations Board v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381, in which it was held that it was not an unfair labor practice for an employer to employ workers to take the place of those on strike and that the employer is not bound to discharge those employed to create places for the strikers wishing to resume their employment. The fact that the defendant might properly and lawfully continue the employment of the plaintiffs is not determinative of the question presented in the present case. That question is whether the defendant was validly obligated to continue their employment.

In the present case it is the claim of the plaintiffs that their contracts of employment were wrongfully terminated. Included in the damages claimed by them were damages for loss of seniority. When the returning strikers returned to work in accord with the award of the Arbitration Board, it meant that they were given seniority so far as lay-offs were concerned over the plaintiffs. In the case of National Labor Relations Board v. Potlatch Forests, Inc., 9 Cir., 1951, 189 F.2d 82, the employer employed workers to take the place of those of its employees who had gone on a strike. Upon termination of the strike, the employer gave seniority over the returning strikers to those employed during the strike. The Court held that it was not an unfair labor practice under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. for the employer to do so. The National Labor Relations Board recently made a ruling which it and some current legal periodicals regard as being contra to the holding in the case of National Labor Relations Board v. Potlatch

Forests, Inc., supra. That ruling was made in Erie Resistor Corp., 132 N.L.R.B. No. 51, July 31, 1961. However, in that case the employer had purported to give those employed during the strike a twenty years' superseniority so far as lay-offs were concerned over the returning strikers. The National Labor Relations Board held that the action of the employer constituted an unfair labor practice. However, while the National Labor Relations Board expressed its disagreement with the holding in the case of National Labor Relations Board v. Potlatch Forests, Inc., the superseniority involved in the case before that Board was an attempted superseniority of twenty years against the returning strikers, which form of superseniority is not involved in this case.

There is one other phase that should be referred to. In the Restatement of Contracts, Sec. 90 (1932), it is stated:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

This statement, although not entitled as such, is referred to as stating the rule of promissory estoppel. In the present case, as heretofore noted, a number of the plaintiffs, in reliance upon the promise of the defendant, did move to Cedar Rapids or did give up farm leases or did give up other jobs. The question is whether, because of those features, the defendant is estopped from terminating their employment.

The Iowa Supreme Court has given a limited recognition to the doctrine of promissory estoppel. See Port Huron Machinery Co. v. Wohlers, 1928, 207 Iowa 826, 221 N.W. 843; Miller v. Lawlor, 1954, 245 Iowa 1144, 66 N.W.2d 267, 272, 48 A.L.R.2d 1058. In the latter case, the Court designated promissory estoppel as a "species of consideration." The recognition given to that doctrine by the Iowa Supreme Court is discussed

in Professor Hudson's article in the Drake Law Review, supra, and in a comment, 41 Iowa Law Review 296. In the latter the writer states (p. 299): "The future of promissory liability in Iowa on the basis of section 90, *Restatement of Contracts*, is shrouded in uncertainty \* \* \*." In Professor Hudson's article, supra (pp. 80, 81), he states that the case of Lewis v. Minnesota Mut. Life Ins. Co., supra, was one in which the elements of detrimental reliance were present which would comply with the requirements of Section 90 of the Restatement but the Iowa Supreme Court did not enforce the promise of employment.

In the case of Meredith v. John Deere Plow Co. of Moline, Illinois, 8 Cir., 1958, 261 F.2d 121, heretofore discussed, the basis of the litigation was a claim on the part of the plaintiff that in reliance upon the promise of the defendant not to cancel his implement agency he made substantial expenditures and gave up the handling of competitive goods. He asserted that the doctrine of promissory estoppel was applicable. The Court in that connection stated in 261 F.2d at page 124:

> "There exists however no such sweeping and absolute principle as that 'action in reliance is sufficient support for a promise'. 1 Williston on Contracts, Rev.Ed., § 140. An obligation cannot be postulated on promissory estoppel, except where 'injustice can be avoided only by the enforcement of the promise'. Restatement, Contracts, § 90. Such injustice must be so substantial, in relation to and in terms of the particular situation involved, as to constitute serious prejudice (not mere legal detriment as in regular contract formation), or to amount in its effect to constructive fraud or unjust enrichment within traditional equitable concept. Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 273, 48 A.L.R.2d 1058."

At 48 A.L.R.2d 1069 and 115 A.L.R. 152, there are extensive annotations on promissory estoppel in which many cases are cited and discussed. None of the cases cited and discussed had to do with the question of the applicability or non-applicability of the doctrine of promissory estoppel in a situation such as is presented in the present case. It is the view of this Court that the Iowa Supreme Court would not hold that the defendant was bound under the doctrine of promissory estoppel.

It is the view of the Court that the Iowa Supreme Court when presented with the situation here presented would probably hold that the defendant was not liable to any of the plaintiffs. The probability that it would so hold would seem to be greater than the probability it would not so hold.

It is the holding of the Court that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure.

It is ordered that judgment shall be rendered in favor of the defendant.